FILED
Clerk
District Court

OCT 31 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

SMITH & WILLIAMS
Attorneys at Law
P.O. Box 5133 CHRB
Saipan, MP 96950
Tel:    233-3334
Fax:    233-3336

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

05 - 0032

| | |
|---|---|
| TRANS PACIFIC EXPORT COMPANY LLC, | **Civil Action No. CV-_____** |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| MARY ANN S. MILNE, | |
| Defendant. | Date:   N/A<br>Time:   N/A<br>Judge:  Alex R. Munson |

**INTRODUCTION**

COMES NOW Plaintiff and for its causes of action against the Defendant alleges the following:

**JURISDICTION**

1.      This is a civil action in which the Court has diversity jurisdiction pursuant to 28 U.S.C.A. §1332 as Plaintiff is a corporation existing under the laws of Oregon, with its principal place of business in Oregon, while Defendant is a resident of the CNMI.  The matter in controversy involves a sum which exclusive of interest and costs, is in excess of $75,000.

**PARTIES**

2.      Plaintiff Trans Pacific Export Company LLC is at all relevant times a limited liability company organized under the laws of the State of Oregon, with its principal place of business in Oregon.

3.      Defendant Mary Ann Milne, is and was at all relevant times, is a U.S. Citizen domiciled in and a citizen of the Commonwealth of the Northern Mariana Islands and doing business in the CNMI.  At all relevant times herein, Mary Ann Milne acted as the landlord to the Plaintiff.

**FACTS**

4.      Plaintiff adopts and realleges paragraph numbers 1-3 as if they are fully set forth hereat.

5.      On or about January 9, 1986, Defendant obtained title to Lot 1925-4A.

6.      On or about June 2, 1986, Defendant obtained title to Lot 1925-4B.

7.      On or about June 2, 1987, Defendant and her common-law husband Joseph Reyes obtained rights to Lot 1925-4C by way of a Warranty Deed.

8.      On or about June 5, 1986, Defendant obtained title to Lot 1925-4D.

9.      Lot Nos. 1925-4A, B, C and D are hereinafter collectively referred to as Lot 1925-4.

10.     On or about August 11, 1986, Defendant obtained title to Lot 1925-5-1.

11.     On or about August 11, 1986, Defendant obtained title to Lot 1925-5-2.

12.     On or about August 30, 1986, Defendant obtained title to Lot 1925-6-1.

13.     On or about August 2, 1990, Defendant sublet Lot Nos. 1925-4, 1925-5-2 and 1925-6-1 (hereinafter the "demised premises") to Basic Construction Supply Corp. by a written sublease executed by the parties.  A copy of the Sublease Agreement (Original Sublease) is attached hereto as Exhibit "1" and is incorporated as if set forth fully herein.

14.     The demised premises described above were lease by Defendant to Basic Construction Supply Corp. for business purposes.

15.     On October 1, 2000, Basic Construction Supply Corp. assigned its leasehold

1    interest in the demised premises to Plaintiff, and Plaintiff is a successor in interest to Basic

2    Construction Supply Crops' rights and interests in the sublease with Defendant.  A copy of the

3    Assignment of Sublease Agreement is attached hereto as Exhibit "2," and is incorporated as if set

4    forth fully herein.

5          16.    After obtaining a leasehold interest in the property by the assignment, Plaintiff has

6    not operated a business at the location and has not transferred its leasehold interest in the

7    demised premises to any third party.

8          17.    Contained within the original sublease agreement under Section 14, *Options*,

9    Plaintiff was given an option to extend the lease for an additional 25 years.  The pertinent

10   language of section 14 is as follows:

11               Lessee [Mary Ann Milne] hereby grants Sublessee options
     either to extend this Sublease for an additional twenty-five (25)
12   years if Lessee timely extends her leases with Lessors as described
     herein on the same terms and conditions stated herein, excepting
13   that the Sublease rental, commencing immediately after the first
     twenty-five (25) year term of this Sublease, shall be determined by
14   mutual agreement of the parties based on the fair rental value of the
     Subleased Property according to the use made of it by Sublessee at
15   the time the option is exercised . . . .

16         18.    The lease was to expire by its terms on January 31, 2005.  In accordance with

17   section 14 of the lease, timely written notice of the exercise of the option to extend the lease was

18   given to Defendant on September 27, 2004.

19         19.    In mid December, 2004, Plaintiff began to discuss with Triple J Ent., Inc. the

20   possibility of an assignment of the lease.  Triple J Ent., Inc. is a corporation doing automotive

21   business in the CNMI on leased property adjacent to the demised premises which is also owed in

22   fee simple absolute by Defendant.

23         20.    On January 24, 2005, Defendant notified Plaintiff that Triple J Ent., Inc. had

24   approached her to rent the premises.  Defendant told Plaintiff she would rather reach an

25   agreement with Plaintiff on the fair rental amount of the extended lease, enter into an extended

26   lease with the Plaintiff, and that Plaintiff should then deal directly with Triple J Ent. Inc. to

27   assign the extended lease.

28         21.    On February 11, 2005, after negotiating the rental amount with Kevin

3

Mendenhall, the authorized representative of Plaintiff, over the telephone, Defendant agreed to a seven and one-half percent (7 ½ %) increase in the monthly rent for the first five years of the lease and a 15 percent increase for each successive 5 years thereafter.  The agreed to rental amount for the first five years was $2,844.00 a month.  The increased amount was to commence on  February 1, 2005.

22.    In accordance with the rental rate increase agreement reached between Plaintiff and Defendant, Plaintiff has paid the increased rent from February 2005 to present.

23.    Between February 11, 2005, and February 25, 2005, Triple J Ent. Inc. was notified of the extended lease rental provisions.

24.    On February 25, 2005, Plaintiff received an offer from Triple J Ent. Inc. to purchase Plaintiff's interest in the property.  That offer was accepted by Plaintiff.

25.    On May 11, 2005, an extended lease was presented to Defendant for her signature. A copy of the negotiated extended lease agreement is attached hereto as Exhibit "3," and is incorporated as if set forth fully herein.

26.    On June 13, 2005, Defendant through her attorney, notified Plaintiff that she wanted more money for the rent of the premises than she had agreed to on February 11, 2005 and she also wanted a 35% share of the net profit for the transfer of the demised premises to Triple J Ent., Inc.

27.    On or about June 20, 2005, Triple J Ent., Inc. notified Plaintiff that as Plaintiff could not deliver an assignment of lease to Triple J Ent., Inc. on the terms that Defendant agreed to, it was suspending its efforts to obtain a leasehold interest in the property.

28.    On or about June 28, 2005, to show Defendant that the agreed to rent increase was more than the fair rental value of the demised premises, Plaintiff obtained two broker's opinion of the fair market value of the property which were given to Defendant.

29.    Despite numerous demands by Plaintiff to Defendant, Defendant failed and continues to fail to sign a lease extension on the terms and conditions she agreed with Plaintiff.

4

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

30.    Plaintiff incorporates paragraphs 1 through 29 above as set forth in full herein.

31.    Section 14 of the Original Lease Agreement provides in pertinent part, that:

> . . . In the event that Lessee has purchased or purchases the
> Subleased Property . . . this Sublease  shall become the main Lease
> on the property . . . . In this event, Lessee (and Owner) hereby
> grants Sublessee an option to extend this Sublease Agreement for
> an additional twenty-five (25) years on the same terms and
> conditions as set forth in this Sublease Agreement, excepting that
> the new rental, commencing immediately after the first twenty-five
> (25) year term of this Sublease Agreement, shall be determined by
> mutual agreement of the parties based on the fair rental value of the
> Subleased Property according to the use made of it by Sublessee at
> the time Sublessee exercises the option, but in no event shall the
> amount be less than $2,645.00 per month.  The parties hereto agree
> to negotiate the fair rental value in good faith.

32.    In accordance with Section 14 of the lease, timely written notice of the exercise of the option to extend the lease was given to Defendant on September 27, 2004.

33.    On or about February 11, 2005, Plaintiff and Defendant, pursuant to Section 14 of the Sublease Agreement, the parties negotiated the fair rental value in good faith and agreed to a seven and one-half percent (7 ½ %) increase in the monthly rent for the first five years of the lease and a 15 percent increase for each successive 5 years thereafter.  The agreed to rental amount for the first five years was $2,844.00 a month.  The increased amount was to commence on  February 1, 2005.

34.    In accordance with the rental rate increase agreement reached between Plaintiff and Defendant, Plaintiff has paid the increased rent from February 2005 to present.

35.    Plaintiff has performed all the stipulations, conditions, and agreements required of it under the terms of the Sublease and extended lease.

36.    Defendant even though having agreed to and accepting an increased rental rate has failed and refused to sign the extended Lease Agreement with Plaintiff, has demanded more money from Plaintiff for monthly rental, and has thus placed a cloud on the title of the property making it unmarketable.

37.    Plaintiff is entitled under the lease to receive from Defendant an executed

5

1  extension of lease evidencing the exercise of the option and evidencing the agreed to rent for the

2  term of the lease for the demised premises.

3      38.     As a direct and proximate result of Defendant's refusal to act in good faith and

4  adhere to and to sign the negotiated extended lease agreement reflecting the rental increase,

5  Plaintiff has been damaged in the amount exceeding $1,000,000.00 plus interest.

6

7  ## SECOND CAUSE OF ACTION
## TO ENFORCE EXTENDED LEASE AGREEMENT

8      39.     Plaintiff incorporates paragraphs 1 through 38 above as set forth in full herein.

9      40.     In reliance on the Original Sublease Agreement made on August 2, 1990, Basic

10  Construction Supply Corp, with Defendant's knowledge and consent, constructed warehouses

11  and retail store space on the demised premises expending for such purpose the sum in excess of

12  $1,300,000.00.

13      41.     Plaintiff, for good and valuable consideration, assumed Basic Construction

14  Supply Corp's interest in the demised property.

15      42.     On or about May 11, 2005, Plaintiff tendered to Defendant a written agreement to

16  be executed by Defendant that memorialized the negotiated rental increase agreement. See

17  Exhibit "3."

18      43.     Despite the negotiated agreement, and Plaintiff's performance thereunder,

19  Defendant refused and failed to execute the extended lease agreement, thus preventing Plaintiff

20  from transferring its interest to a buyer.

21      44.     Plaintiff has performed all of Plaintiff's obligations under the extended lease

22  agreement and at all times mentioned has been and now is ready, able, and willing to execute the

23  written agreement for the demised premises and perform the terms and conditions of the

24  extended lease agreement, as required by such lease and by the parties' agreement for lease.

25      45.     Defendant's refusal to execute the extended lease agreement on Plaintiff's

26  exercise of the option to extend the lease is a violation of the terms and conditions of the lease;

27  and Plaintiff, not having an adequate remedy at law, will sustain irreparable damage and injury

28  unless the court renders to Plaintiff equitable relief, by decreeing and compelling Defendant to

1    specifically perform under the negotiated extended lease agreement.

2                          **THIRD CAUSE OF ACTION**
3                        **INTERFERENCE WITH CONTRACT**

4        46.    Plaintiffs incorporate paragraphs 1 through 45 above as set forth in full herein.

5        47.    In reliance on Plaintiff's right to exercise the option to extend the lease in

6    accordance with the Original Sublease, Plaintiff, after exercising the option and after reaching an

7    agreement with Defendant on the monthly rent, but prior to providing the Defendant with a

8    written extended lease, negotiated with a third party, Triple J Ent. Inc., to assign the property.

9        48.    When Plaintiff and Defendant were negotiating the lease extension, Defendant

10   knew of Plaintiff's intention to try to assign the property to Triple J Ent., Inc.  In fact, Triple J

11   Ent., Inc. had first approached Defendant about leasing the property and Defendant told Triple J

12   Ent., Inc.'s representative to contact Plaintiff.  After Plaintiff received a firm offer from Triple J

13   Ent., Inc. to purchase Plaintiff's interest in the property, Defendant refused, and continues to

14   refuse, to sign the lease extension, but demands more money from Plaintiff for rent and for a

15   35% share in the profit that Defendant believes Plaintiff will gain from its transaction with Triple

16   J Ent., Inc.

17       49.    As a result of Defendant's continued refusal to sign the lease extension, Triple J

18   Ent., Inc. informed Plaintiff that it is suspending its efforts to obtain a leasehold interest in the

19   property.

20       50.    Defendant's refusal to sign the extended sublease agreement has interfered with

21   Plaintiff's contractual transaction with Triple J Ent., Inc.

22       51.    As a result of this interference, Plaintiff suffered damages in an amount to be

23   proven at trial.

24                          **FOURTH CAUSE OF ACTION**
25              **BREACH OF COVENANT OF QUIET ENJOYMENT**

26       52.    Plaintiff  incorporates paragraphs 1 through 51 above as if set forth in full herein.

27       53.    Under Section 4 of the lease, Defendant warranted and agreed that Plaintiff "shall

28   have the right of quiet enjoyment and peaceful possession of the Subleased Property during the

term hereof without interruption."

54.    Defendant breached the covenant of quite enjoyment by her refusal to sign an extended lease agreement evidencing the leasing to Plaintiff the demised premises for a period of 25 years which caused Plaintiff to sustain damages through the loss of its right to transfer said property to a buyer in order to recoup some of its expenses related to the property and to force Plaintiff to incur additional expenses, including, but not limited to maintaining the property and making monthly lease payments on the property.

55.    As a proximate result of Defendant's breach of the covenant of quite enjoyment on the leased premises, Plaintiff has been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT

56.    Plaintiff incorporates paragraphs 1 through 55 above as if set forth in full herein.

57.    The demised premises, and the improvements constructed thereon were intended by the parties to be a commercial business warehouse complex giving ingress and egress access to commercial vehicles to the front, back and one side of the property.

58.    Lot No. 1925-5-1, containing an area of 93 square meters was owned by the Defendant in August 2, 1990. Although Lot No. 1925-5-1's description was not included in the August 2, 1990, lease, the parties believed that the 93 square meters were part of the demised premises.

59.    Basic Construction Supply Corp. enclosed the demised premised by a fence on three sides of the perimeter of the demises premises that included Lot 1925-5-1. Basic Construction Supply Corp. made a paved driveway on the leased premises that provided vehicular traffic access to all parts of the demised premises.

60.    Lot 1925-5-1 includes an area within the fenced perimeter of the property that was improved and became part of the paved driveway. Access to the rear warehouse and to the back of the demised property can only be made by passing through Lot 1925-5-1 on the paved driveway.

61.    When Plaintiff exercised its option to extend the lease and to obtain a written

1   lease evidencing the exercise of the option and the new rental agreement, Defendant refused to

2   sign or include in the agreement the legal description of Lot 1925-5-1.

3       62.    By Defendant not including the 93 square meters in the legal description as part of

4   the demised premises, Plaintiff has been constructively evicted from the demised premises as

5   Plaintiff has no access to all of the property and such constructive eviction is a breach of the

6   implied covenant of quiet enjoyment.

7       63.    The breach of the implied covenant of quiet enjoyment rendered the premises

8   unfit or unsuitable for occupancy in substantial part for the purposes for which they were leased.

9       64.    The intentional conduct of the Defendant causing a breach of the implied

10  covenant of quiet enjoyment directly deprives Plaintiff of the beneficial enjoyment of the leased

11  property for which Plaintiff is entitled to damages in an amount to be proven at trial.

12

13  <center>**SIXTH CAUSE OF ACTION**
**MISREPRESENTATION OF DEFENDANT**
**(LOT 1925-4C )**</center>

14

15      65.    Plaintiff incorporates paragraphs 1 through 64 above as if set forth in full herein.

16      66.    Section 4 of the original Sublease Agreement states that:

17          Lessee warrants that she lawfully leases the Subleased Property;
that the same is free and clear of all encumbrances except her
leases with Lessors; that she has good right to sublease the

18          Subleased property; . . .

19      67.    Lot 1925-4C is part of Lot 1925-4 and was owned by the heirs of Jacinto Faisao.

20      68.    On or about May 26, 1987, Defendant and her common law husband Joseph

21  Reyes obtained a Warranty Deed for Lot 1925-4C from the wife of Jacinto Faisao.

22      69.    On August 2, 1990, Defendant entered into a Sublease Agreement with Basic

23  Construction Supply Corp that included Lot 1925-4C.

24      70.    Defendant, despite her knowledge that Joseph Reyes had an interest in Lot 1925-

25  4C, represented to Basic Construction Supply Corp. and/or Plaintiff that she alone had the  "good

26  right" to sublease the lot.

27      71.    As successor in interest, Plaintiff entered into the Sublease Agreement in good

28  faith with Defendant, relying on Defendant's representation.

<center>9</center>

72.    Upon information and belief, Joseph Reyes is demanding separate compensation for his agreement to the lease extension, thus causing a cloud on the title and restricting Plaintiff's right to sell its interest in the property at fair market value.

73.    As a result of Defendant's misrepresentation, Plaintiff has been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**SECOND MISREPRESENTATION OF DEFENDANT**
**(LOT 1925-4C )**

74.    Plaintiff  incorporates paragraphs 1 through 73 above as if set forth in full herein.

75.    Section 4 of the original Sublease Agreement states that:

> Lessee warrants that she lawfully leases the Subleased Property;
> that the same is free and clear of all encumbrances except her
> leases with Lessors; that she has good right to sublease the
> Subleased property . . . .

76.    Jacinto Faisao had six heirs, all of whom had an equal interest in Lot 1925-4C.

77.    Defendant obtained a fee interest in Lot 1925-4C through a deed from the wife of Jacinto Faisao.

78.    At the time Basic Construction Supply Corp. and Defendant executed the Sublease, the Warranty Deed that Defendant entered into with Jacinto Faisao's wife was defective in that Faisao's estate was not probated and the heirs' approval was not obtained.

79.    Realizing the defect on the deed, Defendant obtained a Quitclaim Deed from 5 of the Faisao heirs in April, 1993 (almost 3 years after Defendant's Sublease Agreement with Basic Construction) transferring the heirs' rights to Lot 1925-4C to Defendant and Joseph Reyes.

80.    Marcello Faisao, one of the heirs of Jacinto Faisao, did not sign the agreement with Defendant on Lot 1925-4C.  Marcello Faisao's interest in the property was never transferred to Defendant.

81.    Lot 1925-4C is still encumbered as of this date.

82.    Defendant, when she entered into a Sublease Agreement with Basic Construction Supply Corp. on August 2, 1990, represented to Basic Construction Supply Corp. that the

10

1    property was free and clear of any encumbrances and that she had the good right to lease the

2    property.

3        83.    Plaintiff, as successor in interest, relied on Defendant's representation in good

4    faith.

5        84.    As a result of Defendant's misrepresentation, Plaintiff has been damaged in an

6    amount  be proven at trial.

7

8                          **EIGHTH CAUSE OF ACTION**
                   **DECLARATORY RELIEF THAT DEFENDANT**
9               **IS NOT ENTITLED TO 35% OF THE SALE PRICE**

10        85.    Plaintiff  incorporates paragraphs 1 through 84 above as if set forth in full herein.

11        86.    Section 10 of the Sublease Agreement states:

12            Sublessee shall have the right to assign this Sublease, or to sublet
             all or any interest in the Subleased Property, without the written
13            consent of Lessee; provided, that in the event of any such
             assignment or sublease, Sublessee shall pay Lessee 35% of the net
14            profit it receives from any sublease or assignment of its
             subleasehold interest in the Subleased Property.
15
        87.    Defendant demands that she be given a 35% share from Plaintiff's net profit in
16
    selling the demised premises to Triple J Ent., Inc.
17
        88.    Net profit is defined in Black's Law Dictionary as follows:
18
            Profit after deduction of all expenses; may be classified as net
19            before or after taxes.  Deducting the cost of goods sold from sales
             gives the *gross profit*.  Deducting the operating expenses
20            (overhead) from gross profit gives the *operating profit*.  Deducting
             income taxes from operating profits gives the *net profit*.
21
        89.    Plaintiff took possession of the demised premises in October, 2000.
22
        90.    Plaintiff assumed all the responsibility under the Milne ground lease including the
23
    assumption of payments of rent.  Plaintiff paid Basic Construction Supply Corp. $100.00 for the
24
    assignment and also assumed a Bank of Guam mortgage on the tenant improvements in excess of
25
    $800,000.
26
        91.    Since the take-over, the demised premises have remained vacant.
27
        92.    Plaintiff has spent money on mortgage payments to the Bank of Guam, paying the
28

1  rent, upkeep, and maintenance of the demised premises, including payments for all

2  appurtenances and improvements thereon.

3        93.    Because the demised premises had no income since 2000, Plaintiff incurred losses

4  year after year.

5        94.    The offer of Triple J Ent. Inc. was the first reasonable offer that Plaintiff received

6  on the demised premises.

7        95.    If the demised premises is assigned to Triple J Ent., Inc. the proceeds of the sale

8  will not be enough to cover Plaintiff's purchase price and Plaintiff's expenditures on the demised

9  premises since October, 2000.

10       96.    Because of this, Plaintiff seeks declaratory relief from the Court that Plaintiff will

11  not realize a net profit in its sale of interest to Triple J Ent., Inc. and that Defendant is not entitled

12  to 35% of the sale proceeds.

13
                              **NINTH CAUSE OF ACTION**
14              **DECLARATORY RELIEF THAT THE FAIR RENTAL VALUE**
       **OF THE DEMISED PREMISES SHOULD BE BASED ON UNIMPROVED PROPERTY**
15          **AND THAT THE RENTAL AMOUNT AGREED TO BY THE PARTIES WAS**
                    **A RESULT OF A GOOD FAITH NEGOTIATION BETWEEN**
16                           **PLAINTIFF AND DEFENDANT**

17       97.    Plaintiff incorporates paragraphs 1 through 96 above as if set forth in full herein.

18       98.    This cause of action is brought for declaratory relief as to the rights of Plaintiff as

19  tenant under the Sublease Agreement dated August 2, 1990, between *Basic Construction Supply*

20  *Corp.* and *Mary Ann S. Milne* for a term of 14 years and 9 months commencing on May 1, 1990.

21       99.    Section 14 of the Sublease Agreement states in part that:

22              . . . In the event that Lessee has purchased or purchases the
                Subleased Property before or during the term of this Sublease, then
23              this Sublease shall become the main Lease on the property, and the
                earlier leasehold estates by the Lease Agreements shall be deemed
24              merged with Lessee's fee simple interest in the Sublease Property.
                In this event, Lessee (and Owner) hereby grants Sublessee an
25              option to extend this Sublease Agreement for an additional twenty-
                five (25) years on the same terms and conditions as set forth in this
26              Sublease Agreement, excepting that the new rental, commencing
                immediately after the first twenty-five (25) year term of this
27              Sublease Agreement, shall be determined by mutual agreement of
                the parties based on the fair rental value of the Subleased Property
28              according to the use made of it by Sublessee at the time Sublessee

1    exercises the option, but in no event shall the amount be less than
$2,645.00 per month. **The parties hereto agree to negotiate the**
2    **fair rental value in good faith.**

3    [Emphasis added.]

4      100. Plaintiff negotiated with Defendant and in good faith agreed to a new rental

5    payment increase of 7 ½ percent in the amount of $2,844.00 for the first 5 years of the extended

6    lease, with a 15 percent increase for each successive 5 years thereafter.

7      101. Plaintiff had the rental value of the property assessed by two professional

8    appraisers in June, 2005, basing the fair rental value on unimproved property.

9      102. The appraisals obtained by Plaintiff showed that the agreed to and increased

10    monthly rental rate of $2844.00 was more than the current fair rental value of the property.

11      103. Defendant, though requested to do so, has failed to perform the terms detailed in

12    Section 14 of the Agreement and has refused to recognize Plaintiff's legal rights under the lease

13    and places a contrary interpretation on the effect of the language used in Section 14 of the lease,

14    by asserting that she is entitled to a monthly rental rate based on the improvements made on the

15    property.

16      104. Plaintiff does not have an adequate remedy at law for Defendant's failure to

17    perform based on the good faith negotiation between Plaintiff and Defendant on the fair rental

18    value of the property.

19      105. Unless Defendant is compelled to perform Defendant's obligations under the

20    agreement, Plaintiff will continue to incur damages.

21      106. Defendant's interpretation of the lease in which she asserts that she is entitled to a

22    rental rate based on the improved property and her refusal to sign the extended lease agreement

23    reflecting the agreed to monthly rental rate makes the property unmarketable.

24      107. Plaintiff has risked substantial capital to carry out the terms of the lease and run

25    the risk of substantial loss in the event of a breach of the lease; hence, it is to the economic

26    interest of Plaintiff and in the interest of justice and equity to determine the respective rights of

27    Plaintiff and Defendant under the lease.

28

**TENTH CAUSE OF ACTION**
**WAIVER OF ESTOPPEL**
**FOR LOT 1925-5-1**

108.    Plaintiff incorporates paragraphs 1 through 107 above as if set forth in full herein.

109.    On August 2, 1990, Defendant represented to Plaintiff that she was subletting the following properties to Plaintiff: Lot 1925-4, Lot 1925-5-2 and Lot 1925-6-1.

110.    Plaintiff proceeded building a fence surrounding the demised premises on three sides and two warehouses on the demised premises.

111.    Defendant had knowledge of the improvements that Plaintiff built on the demised premises and had seen the boundaries in which Plaintiff built the fence and the warehouses.

112.    At all relevant times, Plaintiff considered the boundaries it occupies to be the correct boundaries for the demised premises.

113.    At all relevant times, Defendant did not inform Plaintiff that a small piece of property, identified to Plaintiff recently as Lot 1925-5-1, 93 square meters in size, and which was not part of the demised premises, was encompassed by the fence and the warehouses built by Plaintiff.

114.    Plaintiff had no reason to believe that this lot was separate and distinct from the lots specifically included in the original Sublease Agreement.

115.    Defendant, prior to or during the time that Basic Construction Supply Corp. constructed the warehouses and the fence on the demised premises, did not complain to Basic Construction Supply Corp. nor did she inform Basic Construction Supply Corp. that it was using property not described in the Sublease Agreement.

116.    At all relevant times or during the entire term of the lease, Defendant allowed Basic Construction Supply Corp the use of Lot 1925-5-1.

117.    At all relevant times or during the entire term of the lease, Defendant did not have clear knowledge of the boundaries of the lots she leased to Basic Construction Supply Corp.

118.    Defendant's lack of knowledge or misconception of the exact boundaries of the Sublease Agreement is negligence and such negligence caused Plaintiff to encompass Lot 1925-

14

1    5-1 in its use of the demised premises.

2        119.    Defendant now seeks a separate and increased rental amount for Lot 1925-5-1.

3        120.    Plaintiff is unable to conduct business in a satisfactory manner or to use the leased

4    premises for the intended purpose without possession of that portion of the premises consisting

5    of 93 square meters thus making the remainder of the premises wholly unfit and useless to

6    Plaintiff for the purposes for which the premises had been leased.

7        121.    As a result of Defendant's negligence and/or misconception, Plaintiff has been

8    damaged for loss or decrease of the demised premises' marketability.

9        122.    Based on Defendant's negligence and/or misconception, Plaintiff is entitled to

10   determination from this Court that Defendant has waive or is estopped  from asserting a separate

11   rental rate for Lot 1925-5-1, and that Defendant is barred from claiming that Lot 1925-5-1 is

12   distinct and separate from the demised premises and from claiming a separate compensation for

13   Lot 1925-5-1.

14       123.    Lot 1925-5-1 should be made part of the demised premises as if it was included in

15   the original sublease agreement dated August 2, 1990.

16

17                                ## ELEVENTH CAUSE OF ACTION
                                    ## CONSTRUCTIVE EVICTION

18       124.    Plaintiff  incorporates paragraphs 1 through 123 above as if set forth in full herein.

19       125.    As a result of Defendant's wrongful denial to Plaintiff for the use of Lot 1925-5-1

20   containing an area of 93 square meters, Plaintiff is unable to use the demised premises for its

21   intend purpose resulting in a constructive eviction.

22       126.    When the parties entered into the sublease agreement in August 2, 1990, the

23   parties contemplated that the leased property was suitable for the use contemplated by the parties.

24       127.    The use of the leased property included the use of 93 square meters of property

25   owed by Defendant that permitted access to the rear of the demised premises and to the back

26   warehouse.  By denying Plaintiff vehicular access to the rear of the demised premises Defendant

27   has breach her duty to provide the leased property in a condition suitable for the use

28   contemplated by the parties.

128.    As a result of Defendant's wrongful constructive eviction, Plaintiff was deprived of the possession of the premises for its intended use, deprived of the use of its warehouse buildings, suffered damages to its property and equipment, experience a loss of economic opportunity and was otherwise injured and damaged.

129.    Defendant's action were undertaken with a malicious motive influenced by ill will toward Plaintiff the purpose being deliberately and willfully to injure Plaintiff.

## TWELFTH CAUSE OF ACTION
## CONSTRUCTIVE EASEMENT

130.    Plaintiff incorporates paragraphs 1 through 129 above as if set forth in full herein.

131.    It was within the contemplation of the parties that the leased premises would be used for conducting commercial businesses in which vehicular traffic including tractors pulling forty-foot containers would be entering and leaving the demises property and that Plaintiff would have sole possession and use of the area of Lot No. 1925-5-1 for loading vehicles and for vehicles to access the warehouses.

132.    At all time mentioned herein the paved driveway situated to the north of the warehouses on the demised premises is the only access to the warehouses. The easement of way driveway is the only convenient and feasible method of affording access from the public highway to all of the demised premises. It is a permanent and substantial improvement plainly visible and actually necessary to the appropriate use and enjoyment of the land leased by Plaintiff from Defendant .

133.    Since 1990, Plaintiff and Plaintiff's predecessor in leasehold title have been in possession of the property and have openly and notoriously used and occupied the easement of way driveway over and across the property.

134.    The leased property has been developed with the knowledge and consent of the Defendant and with reference to the driveway and its use at all times mentioned is for the benefit of the demised premises that the placing of improvement have all be made to depend on the use and location of the driveway and easement of way.

16

135.    The easement of way cannot be discontinued or terminated without causing irreparable injury to the Plaintiff in the maintenance and intended use of the property and without substantial and disproportionate damage to the leasehold value of the property.

136.    Plaintiff asserts a perpetual right for the terms of the lease to the use and possession of the driveway and easement of way.

137.    Plaintiff has no plain, complete, nor adequate remedy at law to obtain an easement and that it is necessarily restricted to this application for injunctive relief.

<div align="center">

**THIRTEENTH CAUSE OF ACTION**
**ATTORNEY FEES & COSTS**

</div>

138.    Plaintiff incorporates paragraphs 1 through 128 above as if set forth in full herein.

139.    Section 22 of the August 2, 1990, Sublease Agreement provides that:

> If any legal action is instituted to enforce this Sublease, or any part hereof, the prevailing party shall be entitled to recover reasonable attorney fees and court costs from the other party.

140.    Plaintiff instituted this action against Defendant for breach of contract and other causes of action as stated above.

141.    Plaintiff is entitled to recover reasonable attorney fees and court costs from Defendant should Plaintiff prevails in this action, pursuant to Section 22 of the Sublease Agreement.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

For breach of contract in the amount of $1,500,000:

For the Court to determine and declare the respective rights of Plaintiff and Defendant under Section 14 of the lease;

For the Court to declare Plaintiff has a permanent easement of way for the term of the lease over the property for the ingress and egress from the public highway or roadway;

For the Court to compel the Defendant to specifically perform the provisions, covenants and obligations contained in the lease;

<div align="center">17</div>

1         For the Court to enjoin Defendant from obstructing or interfering in any manner with the

2    use of the easement appurtenant to and for the benefit of the land, and the improvements thereon,

3    lease by Plaintiff;

4         For the Court to issue a declaratory relief that pursuant to Section 10 of the Sublease

5    Agreement, Defendant is only entitled to a share of the net profit on the transfer of interest of the

6    ground lease - without improvements -  and that there is no net profit on the contemplated

7    assignment of the ground lease to Triple J Ent., Inc. if the demised premises is assigned and that

8    Defendant is entitled to no additional payment under the terms and conditions of Section 10 of

9    the Sublease Agreement;

10        For the Court to issue a declaratory relief that the fair rental value of the property is based

11   on unimproved property and that the rental amount of $2,844.00 as agreed to by the parties was

12   an amount negotiated in good faith by both parties and must be adhered to by the Defendant;

13        For compensatory damages;

14        For reasonable attorney's fees and costs;

15        For interest on those amounts as provided by law; and

16        For such other and further relief as this Court deems just and proper.

17

18        Dated this 30th day of October 2005.

19

20                      SMITH & WILLIAMS

                         Attorney for Plaintiff

21

22                      By

23                      ERIC S. SMITH

24

25

26

27

28

FILE NO. 90-3058

FOR RECORDATION )

RECORDATION )

PURPOSES )

90 AUG 3 P 1: 36

BOOK _____ PAGE 118

COMMONWEALTH RECORDER

## SUBLEASE

SUBLEASE made as of this 2ND day of August, 1990, by and between BASIC CONSTRUCTION SUPPLY CORP., of P. O. Box 331, Saipan, CNMI, 96950, hereinafter referred to as "Sublessee," and MARY ANN S. MILNE, P. O. Box 710, Saipan, CNMI, hereinafter referred to as "Lessee."

Section 1.    DESCRIPTION OF PREMISES:

(a)  Lessee hereby subleases to Sublessee those certain properties which form subdivided portions of Saipan Lot No. 1925, which subdivided portions are more particularly described as follows:

(1)  The portion of Saipan Lot No. 1925, known as Lot No. 1925-4 (formerly Lot No. 1925 "A" (Rem.)), located in Saipan, CNMI, as more particularly described on Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985, with coordinates as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,919.13 meters North and 50,468.08 meters East of the Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 38.10 meters to Corner 2;
Thence S 81° 24' 27" E, 60.96 meters to Corner 3;
Thence S 09° 53' 55" W, 38.10 meters to Corner 4;
Thence N 81° 24' 27" W, 60.96 meters to Corner 1,
the point of beginning.

The above described property contains an area of 2,322 square meters, more or less.

— EXHIBIT '1'

(2) The portion of Saipan Lot No. 1925, known as a part of Lot No. 1925-5, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinates of 51,945.59 meters North and 50,534.57 meters East of the Northern Mariana Islands Coordinate System of 1966.

Thence S 81° 24' 27" E, 18.29 meters to Corner 2;
Thence S 09° 53' 55" W, 11.69 meters to Corner 3;
Thence S 65° 22' 33" W, 22.19 meters to Corner 4;
Thence N 09° 53' 55" E, 23.85 meters to Corner 1,
the point of beginning.

The above described property contains an area of 325 square meters, more or less.

Lot 1925-5 is described on the Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

(3) The portion of Saipan Lot No. 1925, known as a part of Lot No. 1925-6, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinates of 51,908.052 meters North and 50,528.020 meters East of the Northern Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 14.25 meters to Corner 2;
Thence N 65° 22' 33" E, 22.19 meters to Corner 3;
Thence S 07° 16' 27" W, 26.41 meters to Corner 4;
Thence N 81° 24' 27" W, 19.50 meters to Corner 1,
the point of beginning.

The above described property contains an area of 388 square meters, more or less.

Lot 1925-6 is described on the Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

TOGETHER with the improvements thereon and the appurtenances and all the rights, title and interest of Lessors in and to land lying in all streets, highways and rights-of-way abutting on or appurtenant to said property, all of said lease property being hereinafter referred to as the "Subleased Property."

2

(b) The term "Lessors" refers to the following persons - Teresita F. Borja, Mercedes F. Mendiola, Concepcion F. Tudela and Jacinto K. Faisao, who are the Lessors of Lessee under the following Lease Agreements (the "lease agreeements"):

(1) Concepcion F. Tudela and Jacinto K. Faisao, who entered into a Lease Agreement dated February 4, 1980, with Lessee, covering the property described herein and additional property hereinafter referred to as the "1980 Lease Agreement."

(2) Mercedes F. Mendiola, who entered into a lease agreement with Lessee dated December 28, 1985, File No. 85-2707, recorded on December 30, 1985, covering the property described herein and additional property hereinafter referred to as the "1986 Lease Agreement for part of Lot 1925-5."

(3) Teresita F. Borja, who entered into a lease agreement with Lessee dated December 30, 1985, File No. 86-0028, recorded on January 3, 1986, covering the property described herein and additional property hereinafter referred to as the "1986 Lease Agreement for part of Lot 1925-6."

Section 2.     TERM OF SUBLEASE:

The term of this Sublease shall be for a period of fourteen (14) years and nine (9) months, commencing at midnight on the 1st day of May, 1990, and ending at midnight on the 31st day of January, 2005. Upon Lessee's exercise of the option provided in Section 14 of this Sublease, the term of this Sublease shall be extended for an additional period of twenty-five (25) years.

Section 3.     RENTAL:

3

The rent during the term of this Sublease shall be as follows:

| PERIOD | MONTHLY RENTAL |
|---|---|
| May 1, 1990 through January 31, 1995 | 2,000.00 |
| February 1, 1995 through January 31, 2000 | 2,300.00 |
| February 1, 2000 through January 31, 2005 | 2,645.00 |

Upon Sublessee's exercise of the option provided in Section 14 of this Sublease Agreement, the rent agreed upon shall thereafter increase by 15 percent every 5 years until the expiration of the option period.

The above rental payments are due and payable on the first day of each month and if such is not paid within fourteen (14) days after receipt of written notice from Sublessee stating Sublessee's failure to pay the same, Sublessee shall be in default.

Section 4.     TITLE AND QUIET ENJOYMENT:

Lessee warrants that she lawfully leases the Subleased Property; that the same is free and clear of all encumbrances except her leases with Lessors; that she has good right to sublease the Subleased Property; that Sublessee shall have the right of quiet enjoyment and peaceful possession of the Subleased Property during the term hereof without interruption by Lessee or Lessor or either of them or any person rightfully claiming under either of them; and that she will, and her heirs, executors and administrators, warrant and defend the same to Sublessee, its successors and assigns, against the lawful claims and demands of all persons.

The Lessee hereby guarantees and warrants that she has valid and existing leasehold interests in the Subleased Property that exists for the term of the Sublease and that the Lessors are the owners of the fee simple interest in the Subleased Property. Further, the Lessee warrants and guarantees that there are no other encumbrances, other than their

4

leasehold interests and the interests, heirs, or other persons having interests in the lands, and that no other signatures or approvals are necessary for the execution of this Sublease. The Sublessee shall have the right to terminate this Sublease and to receive full reimbursement for any expenses incurred by the Sublessee for its use and possession as a result of this covenant, guarantee and warrant of the Lessee. Accordingly, the Sublessee if it determines in its sole discretion, that the title to the leasehold interest in the name of the Lessee or to the Subleased Property in the name of Lessors is encumbered or not satisfactory to the Sublessee, then Sublessee shall have the right to terminate this Sublease and receive all monies and rents set forth above.

Section 5.    UTILITIES, TAXES AND ASSESSMENTS:

Hereafter, Sublessee shall pay, as they become due and payable, all utilities, taxes, assessments and other public charges arising therefore, levied or assessed against the Subleased Property, or arising thereto, levied or assessed against the Subleased Property, or arising by reason of the occupancy, use or possession of the same. If Sublessee, in good faith, shall contest such payment, Sublessee must make payment and file in the name of Lessee or Lessor all such protests or other instruments and commence or prosecute proceedings for the purpose of each contest.

Section 6.    ACCIDENTAL DAMAGE OR INJURY:

Lessors and Lessee shall not be liable for any damage to property or any injury to persons, sustained by Sublessee or others, caused by conditions or activities on the Subleased Property and Sublessee shall indemnify Lessors and Lessee against all claims arising therefrom.

Section 7.    COMPLIANCE WITH LAWS:

Sublessee shall not cause or allow any undue waste on the premises and shall
comply with all applicable laws and ordinances respecting the uses and occupancy of the
premises relating to matters not covered elsewhere in this Sublease.

### Section 8.    BUILDING AND IMPROVEMENTS:

Sublessee may construct, rebuild, remove or replace any improvements on the
Property. If such is left or remains on the Property at the expiration of this Sublease, it
shall become the property of Lessee. All appliances and equipment made or placed upon
said premises by Sublessee shall remain the property of Sublessee and may be removed by
Sublessee in whole or in part at any time prior to the expiration of this Sublease; provided
that fixtures attached to the improvements, such as a generator, may not be removed,
unless Sublessee removes it in a manner that does not damage the structure that houses the
attached fixture.

### Section 9.    MORTGAGE:

Sublessee shall have the right to mortgage Sublessee's leasehold interest without
consent of Lessee. In addition, Lessee assigns to Sublessee all of her rights arising under
Section 6 of the 1980 Lease Agreement insofar as such rights pertain to the Subleased
Property. If Sublessee mortgages its leasehold interest, Lessee shall not terminate this
Sublease because of any breach, other than for the non-payment of rent on the part of
Sublessee, if within twenty-eight (28) days after Lessee has mailed to Sublessee and its
Mortgagee a written notice of such breach, the Mortgagee or Sublessee undertake, perform
or commence remedial action to cure such breach within a reasonable time thereafter. For
the non-payment of rent or any monies due hereunder, Lessee shall give fourteen (14)
days' written notice to Sublessee and its Mortgagee and if such is not paid within said
fourteen (14) days, Sublessee shall be in default and Lessee may terminate this Lease.

6

Lessee agrees that at all times when written notice of breach is given to Sublessee, Lessee shall also give a written notice of the same, by registered mail, to the Mortgagee, and that Mortgagee shall have the right to cure any breach or make payments on behalf of Sublessee.  Lessee shall not mortgage her leasehold interest or unpaid Sublessee's rights to mortgage the leasehold in any way whatsoever.

Section 10.    SALES, ASSIGNMENTS, AND SUBLEASES:

Sublessee shall have the right to assign this Sublease, or to sublet all or any interest in the Subleased Property, without the written consent of Lessee; provided, that in the event of any such assignment or sublease, Sublessee shall pay Lessee 35% of the net profit it receives from any sublease or assignment of its subleasehold interest in the Subleased Property.

Section 11.    ESTOPPEL CERTIFICATE:

If Sublessee's Mortgagee shall require a certificate of non-default and a statement that no undisclosed amendments or agreements exist between Lessors and Lessee, or between Sublessee and Lessee, the same shall be executed and delivered in a form satisfactory to Sublessee's Mortgagee, provided that the matter asserted is true.

Section 12.    CONDEMNATION:

Sublessee and Lessee covenant and agree that in the event the whole, or any portion of the Subleased Property shall be taken in condemnation proceedings or by any right of eminent domain or otherwise for public purposes, then and on the happening of any such event, Sublessee, at its option, may terminate this Sublease and the term hereby granted and all the rights of Sublessee hereunder and the rent shall be paid up to the date of such termination and any unearned rent paid in advance by Sublessee shall be refunded pro rata.

7