If Sublessee desires to continue to lease the Subleased Property, then the rent shall be reduced in proportion to the land taken as such bears to the total area of land leased. Sublessee, Lessors, and Lessee may each independently file separate claims in such proceedings for the purpose of having the value of their respective interests determined, and the award shall be paid accordingly; but if the public or governmental authorities shall object or refuse to permit separate claims to be proved and/or distribute said award in such manner, Lessors will prosecute all claims for damages to the property on behalf of Lessors, Lessee, and Sublessee (and authority to do so is hereby granted), and after deducting all reasonable expenses incurred by Lessors incident thereto, the balance of said award shall be divided among Lessors, Lessee and Sublessee pro rata in proportion of their respective interests as established in said proceeding. In the event Lessors prosecute said claim on behalf of both parties hereto, all such awards shall be paid to Lessors for the account of Lessors, Lessee and Sublessee as hereinbefore provided.

Section 13.    <u>DEFAULT AND REMEDIES</u>:

The following events shall be deemed to be events of default by Sublessee under this Sublease:

(a)    Sublessee shall fail to pay any installment or rent hereby reserved or shall fail to pay any taxes or other charges required to be paid by Sublessee under the terms of this Sublease and such failure shall continue for a period of fourteen (14) days from and after written notice from Lessee.

(b)    Sublessee shall breach any term, provision or covenant of this Sublease, other than the payment of rent, taxes or other charges, and fails to commence the removal or curing of such breach within twenty-eight (28) days from and after written notice from Lessee.

8

Upon the occurrence of any event of default specified in this section, Lessee may terminate this Sublease and may, upon twenty-eight (28) days' written notice, enter in, into and upon the leased property and take possession of all buildings, fixtures and improvements, and evict Sublessees without liability or trespass. The remedies herein shall not prejudice Lessee's other rights and remedies at law or equity.

In the event Lessee fails to act after demand and within a reasonable period, Sublessee shall have the right to cure any default of Lessee under the lease agreements or enforce or assert any of Lessee's rights or claims against Lessor under the lease agreements.

Section 14.    OPTION:

Lessee hereby grants Sublessee options either to extend this Sublease for an additional twenty-five (25) years if Lessee timely extends her leases with Lessors as described herein on the same terms and conditions stated herein, excepting that the Sublease rental, commencing immediately after the first twenty-five (25) year term of this Sublease, shall be determined by mutual agreement of the parties based on the fair rental value of the Subleased Property according to the use made of it by Sublessee at the time the option is exercised, but in no event shall the amount be less than $2,645.00 per month or to exercise Lessee's rights to extend the leases with Lessors in the three Lease Agreements as they pertain to the Subleased Property if Lessee does not timely extend the leases as described herein. The parties hereto agree to negotiate the fair rental value in good faith. Any rental agreed upon by Lessee and Lessors shall not determine the fair market value of the Subleased Property for the use to which Sublessee puts the Subleased Property.

If Lessee has exercised her option under the 1980 Lease Agreement by sending written notice to Lessors and a copy thereof to Sublessee, at least sixty (60) days prior to the end of the first 14 year, 9 month term of this Sublease, then Sublessee may exercise

9

this option by written notice to Lessee at any time, at least thirty (30) days prior to the end of the first 14 year, 9 month term of this Sublease.

If Lessee does not exercise her option to extend the term of the leases by sending written notice to Lessors at any time, at least sixty (60) days prior to the end of the first 14 year, 9 month term of the Sublease and with a copy thereof to Sublessee, then in such event Lessee hereby assigns and sells to Sublessee her right to extend the leases under the Lease Agreements as they pertain to the Subleased Property for a twenty-five (25) year term; in such event, Sublessee may exercise the option by sending written notice to Lessors.

In the event that Lessee has purchased or purchases the Subleased Property before or during the term of this Sublease, then this Sublease shall become the main Lease on the property, and the earlier leasehold estates created by the Lease Agreements shall be deemed merged with Lessee's fee simple interest in the Subleased Property. In this event, Lessee (and Owner) hereby grants Sublessee an option to extend this Sublease Agreement for an additional twenty-five (25) years on the same terms and conditions as set forth in this Sublease Agreement, excepting that the new rental, commencing immediately after the first twenty-five (25) year term of this Sublease Agreement, shall be determined by mutual agreement of the parties based on the fair rental value of the Subleased Property according to the use made of it by Sublessee at the time Sublessee exercises the option, but in no event shall the amount be less than $2,645.00 per month. The parties hereto agree to negotiate the fair rental value in good faith.

Section 14.     GENDER:

10

Any reference to Lessors or Lessees, or the use of any pronoun thereto shall mean and include all genders and shall mean and include the singular or plural, as the case may be.

Section 15.    INSOLVENCY OR BANKRUPTCY:

If Sublessee becomes insolvent, voluntarily or involuntarily bankrupt, or if a receiver, assignee, or other liquidating officer is appointed for the business of Sublessee, then Lessee may terminate this Sublease at the option of Lessee.

Section 16.    WAIVER OF BREACH:

The waiving of any of the provisions of this Sublease by any party shall be limited to the particular instance involved and shall not be deemed to waive any other rights of the same party or any other terms of this Sublease.

Section 17.    TERMINATION AND SURRENDER:

Sublessee shall surrender the premises within thirty (30) days from receipt of notice of termination of this Sublease, or on the last day of the term of the Sublease. Lessee shall have the right to place and maintain on the premises "For Rent" signs during the last sixty (60) days of the term of this Sublease.

If Sublessee shall surrender the premises at the election of Sublessee, the liability for all duties and obligations required of Sublessee shall terminate upon surrender to the Lessee.

Section 18.    REMOVAL OF PERSONAL PROPERTY:

Sublessee shall have the right to remove all personal property, trade fixtures, and office equipment, whether attached to the premises or not, prior to or upon termination of this agreement.

If Lessee or Lessors re-enter or re-take possession of the Subleased Property prior to normal expiration of this Sublease, Lessee or Lessors shall have the right, but not the obligation, to remove from the premises all personal property located therein belonging to Sublessee, and either party may place the property in storage in a public warehouse at the expense and risk or Sublessee.

### Section 19.   HOLDING OVER:

Any holding over at the expiration of this Sublease with the consent of Lessee shall be on a month-to-month basis, which tenancy may thereafter be terminated.  During any holdover tenancy, Sublessee shall pay Lessee a fair market value rental rate on a monthly basis as provided in Section 14 and shall be bound by all the terms and conditions of this Sublease.

### Section 20.   INTEREST OF SUCCESSORS:

The covenants and agreements of this Sublease shall be binding on the successors and assigns of Lessee and on the successors and assigns of Sublessee.

### Section 21.   NOTICES:

As long as Trans Pacific Export, Ltd. owns at least 50 percent of Sublessees outstanding voting shares, notice to Sublessee shall be effective only when written notice is also received by Trans Pacific Export, Ltd. at P. O. Box 364; Lake Oswego, Oregon 97034, or its last known mailing address.

12

Except where otherwise required by statute, all notices given pursuant to the provisions hereof may be sent by United States mail, postage prepaid, to the last known mailing address of the party or person for whom the notice is intended and notice shall be deemed to be received in such a case two (2) days after the notice is so deposited. (Any notice sent between the United States and Saipan or Saipan and the United States must be carried as mail on an aircraft for the foregoing presumption about receipt to apply.)

Section 22.     <u>COSTS OF LITIGATION</u>:

If any legal action is instituted to enforce this Sublease, or any part hereof, the prevailing party shall be entitled to recover reasonable attorneys fees and court costs from the other party.

Section 23.  <u>CANCELLATION AND RESCISSION OF SUBLEASES</u>:

(a)  The Sublease executed between Lessee and her husband and Sublessee dated February 1, 1980, filed with the Clerk of Court as Lease Agreement No. 859, at Book 1, Page 30, on May 8, 1980, as amended by an Amendment of Sublease dated May 27, 1987, Commonwealth Recorder's File No. 87-1801, June 2, 1987, is hereby cancelled and rescinded in its entirety.

(b)  The Sublease Agreement executed between Lessee and Sublessee dated February 1, 1986, recorded with the Commonwealth Recorder's Office as File No. 87-1802, on June 2, 1987, is hereby cancelled and rescinded in its entirety.

(c)  The Sublease Agreement executed between Lessee and Sublessee dated February 1, 1986, recorded with the Commonwealth Recorder's Office as File No. 87-1803, on June 2, 1987, is hereby cancelled and rescinded in its entirety.

IN WITNESS WHEREOF, the parties hereto have executed this Sublease on the day and year first above written.

LESSEE:

_Mary Ann S Milne_

MARY ANN S. MILNE

SUBLESSEE:

BASIC CONSTRUCTION SUPPLY CORP.

By: ROLAND G. JASTILLANA
    President

| Commonwealth of the Northern Mariana Islands | ) |
|---|---|
| | ) |
| Saipan, No. Mariana Islands | ) |

ss. **ACKNOWLEDGMENT**

The foregoing Sublease was acknowledged before me this 2 day of August, 1990, by MARY ANN S. MILNE.

In Witness Whereof, I have hereunto set my hand and affixed my official seal on the date and year first above-written.

My Commission Expires on the 4
of _Sept_, 19 91.    Notary Public.

14

Commonwealth of the Northern          )
Mariana Islands                       )        ss. **ACKNOWLEDGMENT**
                                      )
Saipan, No. Mariana Islands           )

The foregoing Sublease was acknowledged before me this 2 day of August, 1990, by ROLAND G. JASTILLANA, President of BASIC CONSTRUCTION SUPPLY CORP., a corporation organized under the laws of Commonwealth of the Northern Mariana Islands, on behalf of the corporation.

In Witness Whereof, I have hereunto set my hand and affixed my official seal on the date and year first above-written.

My Commission Expires on the 4
of _____ Sept _____, 19 9 ( .    Notary Public



**1 5**

## ASSIGNMENT OF SUBLEASE

FILE NO. 00-2472

EFFECTIVE DATE:    October 1, 2000                        NOV 15 '22 :11

FROM:    BASIC CONSTRUCTION SUPPLY CORPORATION
         A corporation incorporated under the laws of the
         Commonwealth of Northern Mariana Islands
         PO Box 331
         Saipan, MP  96950

IN FAVOR OF:    TRANS PACIFIC EXPORT CO., LLC,
                An Oregon limited liability company
                PO Box 1810
                Lake Oswego, OR  97035


      Assignor is the sublessee under that Sublease with Mary Ann S. Milne, sublessor, dated August 2, 1990 (the "Sublease").  Assignor desires to assign the Sublease to Assignee and Assignee agrees to accept an assignment of the Sublease and to assume the Sublease.

      NOW, THEREFORE, in consideration of the sum of $100 and the promises set forth below, Assignor and Assignee agree as follows:

1.    As of the Effective Date set forth above, Assignor hereby assigns all of its right, title, and interest in and to the Sublease to Assignee.

2.    From and after the Effective Date, Assignee agrees to perform all of the obligations of the sublessee under the Sublease and to defend, indemnify and hold Assignor harmless from Assignee's failure to perform the obligations of the sublessee under the Sublease, from and after the Effective Date.

      IN WITNESS WHEREOF, Assignor and Assignee have executed and delivered this Assignment of Sublease to be effective as of the Effective Date.

ASSIGNOR:    BASIC CONSTRUCTION SUPPLY
             CORPORATION, a corporation
             incorporated under the laws of the
             Commonwealth of the Northern
             Mariana Islands.

             By: _____
                 Roland Jastillana
                 President



— EXHIBIT "2"                        1

ASSIGNEE:                           TRANS PACIFIC EXPORT CO., LLC,
                                    An Oregon limited liability company


                                    By: _____
                                        George Stroemple
                                        Member

STATE OF _Hawaii_

COUNTY OF _Honolulu_


        This instrument was acknowledged before me by Roland Jastillana, the President
of Basic Construction Supply Corporation, a corporation incorporated under the laws of the
Commonwealth of the Northern Mariana Islands, on behalf of and as the act and deed of said
corporation, on this the 19th day of October, 2000.


                                    _____
                                    NOTARY PUBLIC
                                    Printed Name: _____
                                    My Commission Expires: _____


                                        SCOTT GORBITZ
                                        MY COMMISSION
                                        EXPIRES JULY 31, 01


EXHIBIT B                    2

(Above for Recording Use Only)

# LEASE AGREEMENT

This Lease Agreement is made on the _____ day of April 2005, by and between **JOSEPH C. REYES and MARY ANN S. MILNE** of Saipan, Commonwealth of the Northern Mariana Islands, hereinafter referred to as the "Lessor," and **TRANS PACIFIC EXPORT COMPANY, LLC**, an Oregon limited liability company, hereinafter referred to as "Lessee."

### SECTION I.
### RECITALS

A.    This lease of real property includes four lots:

1.    Lot No. 1925-4, containing an area of 2,322 square meters, more or less and owed by Joseph C. Reyes and Mary Ann S. Milne.

2.    Lot No. 1925-5-1, containing an area of 93 square meters, more or less and owed by Joseph C. Reyes and Mary Ann S. Milne.

3.    Lot No. 1925-5-2, containing an area of 325 square meters, more or less and owed by Joseph C. Reyes and Mary Ann S. Milne.

4.    Lot No. 1925-6-1, containing an area of 388 square meters, more or less and owed by Mary Ann S. Milne.

In consideration of the payment of rent, the mutual covenants contained herein, and other valuable consideration, the receipt of which is hereby acknowledged, the parties agree:

### SECTION II.
### DESCRIPTION OF PREMISES

Lessor leases to Lessee the real property and improvements thereon currently known as follows:

1.    Lot Number 1925-4 (formerly Lot No. 1925 "A" (Rem.)) located in Saipan, CNMI,, as more particularly described on Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985, with coordinates as follows:



— EXHIBIT "3"

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,919.13 meters north and 50,468.08 meters east of the Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 38.10 meters to Corner 2;
Thence N 81° 24' 27" E, 60.96 meters to Corner 3;
Thence N 09° 53' 55" W, 38.10 meters to Corner 4;
Thence N 81° 24' 27" W, 60.96 meters to Corner 1,
the point beginning.

The above described property contains an area of 2,322 square meters, more or less.

2.    Lot No. 1925-5-2, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,945.59 meters north and 50,534.57 meters east of the Mariana Islands Coordinate System of 1966.

Thence S 81° 24' 27" E, 18.29 meters to Corner 2;
Thence S 09° 53' 55" W, 11.69 meters to Corner 3;
Thence S 65° 22' 33" W, 22.19 meters to Corner 4;
Thence N 09° 53' 55" E, 23.85 meters to Corner 1,
the point beginning.

The above described property contains an area of 325 square meters, more or less.

Lot No. 1925-5 is described on the Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

3.    Lot No. 1925-5-1, located in Saipan, CNMI, more particularly described as follows:

Part of lot 1925-5, said lot 1925-5 being described on the plat recorded with the Commonwealth Recorder as Document No 85-1318 at book 1 page 117, on July 17, 1985,

Beginning at a corner which is designated as Corner No 1. having plane rectangular coordinates of 51,942.86 meters North and 50,552.66 meters East of the Mariana Islands Coordinate System of 1966;

Thence South 81 24' 27" East a distance of 11.55 meters to corner 2;

Thence Easterly on the ac of a circle 9.14 meters in radius curving to the left an arc distance of 3.39 meters, the chord of said arc running South 14 00' 30" East, a distance of 3.37 meters to corner 3;

Thence South 65 22' 33" West a distance of 15.67 meters to corner 4;

Thence North 09 53' 55" East a distance of 11.69 Meters to cornfer 1, the point of beginning.

The above described property contains an area of 93 square meters, more or less.

4.      Lot No. 1925-6-1, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,908.052 meters north and 50,528.020 meters east of the Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 14.25 meters to Corner 2;
Thence N 65° 22' 33" E, 22.19 meters to Corner 3;
Thence S 07° 16' 27" W, 26.41 meters to Corner 4;
Thence N 81° 24' 27" W, 19.50 meters to Corner 1,
the point beginning.

The above described property contains an area of 388 square meters, more or less.

Lot No. 1925-6 is described on the Subdivision Plat DLS Check No. 2105-85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

Together with the improvements thereon and the appurtenances and all the rights, title and interest of Lessor in and to land lying in all streets, highways and rights-of-way abutting on or appurtenant to said property, all of said lease property.

## SECTION III.
## TERM

A.      The lease term shall be for twenty-five (25) years, commencing on February 1, 2005, and terminating on January 31, 2030.

## SECTION IV.
## RENT

A.      For the first five (5) years of the term of this Lease, from February 1, 2005 through January 31, 2010, Lessee shall pay as basic rent the amount of $2844.00 per month.

B.      For the second five (5) years of the term of this Lease, from February 1, 2010 through January 31, 2015, Lessee shall pay as basic rent the amount of $3271.00 per month.

C.      For the third five (5) years of the term of this Lease, from February 1, 2015 through January 31, 2020, Lessee shall pay as basic rent the amount of $3762.00 per month.

D.      For the fourth five (5) years of the term of this Lease, from February 1, 2020 through January 31, 2025, Lessee shall pay as basic rent the amount of $4326.00 per month.

E.      For the fifth and final five (5) years of the term of this Lease, from February 1, 2025 through January 31, 2030, Lessee shall pay as basic rent the amount of $4975.00 per month.

## SECTION V.
## USE OF PREMISES

A.      The Premises may be used for all legal purposes.

B.      Lessee shall not use the demised Premises for any unlawful, improper, or immoral use.  Lessee shall maintain the demised Premises in a sanitary condition, and shall not keep, permit, or maintain any nuisance in or on the demised Premises.

## SECTION VI.
## ALTERATIONS, ADDITIONS, AND IMPROVEMENTS

A.      At the commencement of the term, Lessee shall accept the buildings and improvements and any equipment in their existing condition and state of repair, and Lessee agrees that no representations, statements, or warranties, express or implied, have been made by or on behalf of Lessor in respect thereto except as contained in the provisions of this lease agreement.

B.      As further consideration for entering into this lease, all improvements existing on the Premises at the commencement date of this lease are acknowledged to be Lessee's personal property and Lessor have no interest therein during the term of the lease.  Lessee may use, sell, demolish, remove, or otherwise dispose of all such improvements or any portion of any such improvements.  Lessor shall receive no compensation for the improvements other than the performance of Lessee's covenants expressed in this lease.

C.      Lessee shall have the right, but not the obligation, at any time and from time to time during the term of this lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove buildings and other improvements on the Premises, subject to the condition that the cost of any such construction, reconstruction, demolition, or of any change, alteration, or improvements, shall be borne and paid for by Lessee.

D.      Before commencement of any work, all plans and specifications shall be filed with and approved by all governmental departments or authorities having jurisdiction and any public utility company having an interest in such matters, and all work shall be done in accordance with the requirements of local regulations.

E.      Lessee shall have the right in connection with any development of the property, at its sole option, at any time during the term of this lease, to remove vegetation and to excavate and to remove sand, soil, and other materials from the Premises. In no event shall any such action constitute waste and the Lessor hereby release Lessee from any obligation to restore the Premises to the condition existing upon the commencement date of this lease.

## SECTION VII.
## RIGHT TO BUILD AND OWNERSHIP OF IMPROVEMENTS AND FIXTURES

Lessee shall have the right at any time during Lessee's occupancy of the Premises to remove any and all equipment and fixtures owned or placed by the Lessee, its sublessee or licensees, in, under, or upon the Premises, or acquired by Lessee, whether before or during the lease term, but Lessee shall not be obligated to do so. Lessee covenants that, on the last day of the term of the lease, Lessee will peaceably and quietly leave and surrender the Premises and all improvements situated thereon, in their then-current condition and order; and title to all such improvements shall pass to Lessor.

## SECTION VIII.
## EASEMENT FOR STREETS, WATER, ETC.

In order to provide for the more orderly development of the Premises, it may be necessary, desirable, or required that street, water, sewer, drainage, gas, power line and other easements and dedications, and similar rights be granted or dedicated over or within portions of the Premises. As one of the moving considerations to Lessee for the execution of this lease, Lessor shall, upon request of Lessee, join with Lessee in executing and delivering such documents from time to time, and throughout the term of this lease, as may be appropriate, necessary, or required by the several governmental agencies, public utilities, and companies for the purposes of granting such easements and dedications, provided that such easements and dedications shall not materially diminish or interfere with Lessor' reversionary interest.

## SECTION IX.
## ZONING AND SUBDIVISION PERMITS

In the event that Lessee deems it necessary or appropriate to obtain conditional use permits, zoning changes, variances, consolidation or subdivision and plan approval for the Premises, any part thereof and/or such adjoining parcels in which Lessee may now have or hereafter acquire an interest, Lessor agree, from time to time upon request of Lessee, to execute such documents, petitions, applications, and authorizations as may be appropriate or required to serve any of the foregoing relating to the establishment, without limitation, of a planned unit development, a condominium, or cooperative apartment arrangement or other development.

## SECTION X.
## LESSEE TO BEAR EXPENSE

In all of the foregoing instances in which the assistance of the Lessor is required, Lessor shall be without expense therefor, the cost and expense thereof to be borne solely by Lessee.

## SECTION XI.
## POWER OF ATTORNEY

For the purposes of accomplishing the objectives set forth in sections six through eight above, or any of them, Lessor hereby appoint Lessee as Lessor's attorney-in-fact and agent to be irrevocable so long as this lease remains in full force and effect, and which shall be deemed to be a power coupled with an interest, to execute, deliver, and to record any documents which may be appropriate, necessary, or required to accomplish any of the foregoing objectives, in the name of Lessor, and any such execution and delivery and recordation may be relied upon by any third person.

## SECTION XII.
## MAINTENANCE AND REPAIR

Lessee shall, at all times during the term of this agreement and at his own cost and expense, repair and maintain in a good, safe, and substantial condition, the demised Premises and shall use all reasonable precaution to prevent waste, damage, or injury to the demised Premises.

## SECTION XIII.
## UTILITIES

Lessee shall pay for all electricity, gas, water, telephone, and cable TV used or consumed by Lessee or Lessee's guests, tenants, or employees on the demised Premises.

## SECTION XIV.
## TAXES

A.    Lessee shall pay all real property taxes and assessments levied against the demised Premises that accrue after execution and delivery of the demised Premises.

B.    Anything in this Section to the contrary notwithstanding, Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor' legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the Premises herein leased which may become a lien on the Premises or collectable out of the same.

C.    Lessee shall have the right to contest the validity of any tax or special assessment payable by it which Lessee deems to have been illegally levied or assessed against the Premises, and for that purpose shall have the right to institute such proceeding or proceedings in the name of Lessor

as Lessee may deem necessary, provided that the expenses incurred by reason thereof shall be paid by Lessee, and provided further, that it is necessary to use the name of Lessor in carrying on such proceedings.

SECTION XV.
INSURANCE

A.      During the term of this lease agreement and for any further time that Lessee shall hold the demised Premises, Lessee at its option shall obtain and maintain at its expense personal injury insurance.

B.      All insurance provided by Lessee as required by this section shall be carried in favor of Lessor and Lessee as their respective interests may appear.

C.      In the event said improvements shall be destroyed or damaged by fire or any other casualty, then as often as the same shall happen all insurance proceeds, if any, in the name of Lessee on the Premises, shall be available for and may be used by Lessee as it desires, and Lessor shall have no interest therein.

SECTION XVI.
DEFAULT OR BREACH

Each of the following events shall constitute a default or breach of this lease agreement by Lessee:

A.      If Lessee, or any successor or assignee of Lessee while in possession, shall file a petition in bankruptcy or insolvency or for reorganization under any bankruptcy act, or shall voluntarily take advantage of any such act by answer or otherwise, or shall make an assignment for the benefit of creditors.

B.      If involuntary proceedings under any bankruptcy law or insolvency act shall be instituted against Lessee, or if a receiver or trustee shall be appointed of all or substantially all of the property of Lessee, and such proceedings shall not be dismissed or the receivership or trusteeship vacated within one hundred eighty (180) days after the institution or appointment.

C.      If Lessee shall fail to perform or comply with any of the conditions of this lease agreement and if the nonperformance shall continue for a period of thirty (30) days after notice of nonperformance given by Lessor to Lessee or, if the performance cannot be reasonably had within the thirty-day period, Lessee shall not in good faith have commenced performance within the thirty-day period and shall not diligently proceed to completion of performance.

## SECTION XVII.
## CONDEMNATION

Rights and duties in the event of condemnation are as follows:

A.    If the whole of the demised Premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, this lease agreement shall cease and terminate as of the date on which title shall vest in that authority.

B.    If only a portion of the demised Premises shall be taken or condemned, this lease agreement shall not cease or terminate.

C.    In the event of any taking or condemnation in whole or in part, the entire resulting award of consequential damages shall belong to Lessee without any deduction from such award for the value of the unexpired term of this lease agreement or for any other estate or interest in the demised Premises now or later vested in Lessee.

D.    In case of any governmental action not resulting in the taking or condemnation of any portion of the demised Premises but creating a right to compensation for such action, or, if less than a fee title to all or any portion of the demised Premises shall be taken or condemned by any governmental authority for temporary use or occupancy, this lease agreement shall continue in full force and effect without reduction or abatement of rent, and the rights of the parties shall be unaffected by the other provisions of this section, but shall be governed by applicable law.

E.    Lessee shall be entitled to all condemnation awards attributable to any such improvements.

## SECTION XVIII.
## EXISTING EASEMENTS

The parties shall be bound by all existing easements, and encumbrances of record relating to the demised Premises, and Lessor shall not be liable to Lessee for any damages resulting from any action taken by a holder of an interest pursuant to the rights of that holder.

## SECTION XIX.
## LESSOR'S WARRANTY OF TITLE

A.    Lessor warrants and covenants that the Premises described above are the property of the Lessor in fee simple absolute and Lessor has the full and unhindered right to make this lease.

B.    There are no liens or encumbrances against the Premises which are superior to this lease.

C.    Lessor shall cause any lien or encumbrance against the Premises or any portion thereof which is superior or inferior to this lease to be promptly discharged or subordinated to this

lease at the request of Lessee or its lender. The cost of securing the subordination of such lien or encumbrance to this lease shall be borne solely by the Lessor.

D.    Lessor shall execute, cause to be executed, or procure and furnish to Lessee, without expense to Lessee, any further assurances of title consistent with the warranties of this Section that may be reasonably required by Lessee for Lessee's protection or in connection with the use of the Premises.

## SECTION XX.
## QUIET ENJOYMENT

Lessor warrants that Lessee shall be placed in and granted peaceable and quiet enjoyment of the demised Premises, be permitted to hold, occupy and enjoy the Premises free from any eviction, hindrance, molestation, or interference by Lessor or any person claiming by, through, or under Lessor during the term of the Lease if Lessee fully and punctually performs the terms and conditions imposed on Lessee.

## SECTION XXI.
## AUTHORITY OF LESSEE TO ENTER INTO LEASE

Lessee corporation has obtained the necessary approval from its Board of Directors to enter into this lease agreement.

## SECTION XXII.
## LIABILITY OF LESSOR

Lessee shall be in exclusive control and possession of the demised Premises, and Lessor shall not be liable for any injury or damages to any property or to any person on or about the demised Premises or for any injury or damage to any property of Lessee.

## SECTION XXIII.
## ASSIGNMENT OR SUBLEASE

This lease may be assigned or transferred, or all or any part of the demised Premises may be sublet or occupied by anybody other than Lessee. Notice by Lessee or the consent by Lessor to an assignment, mortgage, pledge, sublet, occupancy, or transfer shall **not** be required to be given. Lessee, however, shall provide a copy to Lessor of any assignment or sublease 15 days after execution of such assignment or sublease.

## SECTION XXIV.
## MORTGAGE OF LESSEE'S INTEREST

Lessee may, at any time or from time to time during the term of this lease, encumber by mortgage or other security instrument, by way of assignment, or otherwise, Lessee's interest under this lease and the leasehold estate hereby created in whole or in part, for any purpose, without notice to or the consent of Lessor. Lessor shall provide a non-disturbance agreement upon request of Lessee, Lessee shall bear the cost and expense thereof.

## SECTION XXV.
## SURRENDER AND HOLDING OVER

Lessee shall surrender the demised Premises and remove all personal property and personnel from the demised Premises on termination under this agreement, on expiration of the term of this lease.

## SECTION XXVI.
## EFFECT OF PARTIAL INVALIDITY

Should any section or any part of any section of this agreement be rendered void, invalid, or unenforceable by any court of law, for any reason, such a determination shall not render void, invalid, or unenforceable any other section or any part of any section in this agreement.

## SECTION XXVII.
## CHOICE OF LAW

This agreement has been made and entered into in the Commonwealth of the Northern Mariana Islands, and the laws of such Commonwealth shall govern the validity and interpretation of this agreement and the performance due hereunder.

## SECTION XXVIII.
## INTEGRATION

The drafting, execution, and delivery of this agreement by the parties have been induced by no representations, statements, warranties, or agreements other than those expressed herein. This agreement embodies the entire understanding of the parties, and there are no further or other agreements or understandings, written or oral, in effect between the parties relating to the subject matter hereof unless expressly referred to herein. Any prior understanding or representation of any kind preceding the date of this lease agreement shall not be binding upon either party except to the extent incorporated in this lease agreement.

## SECTION XXIX.
## WAIVERS

Waiver by Lessor of any breach of any covenant or duty of Lessee under this lease is not a waiver of a breach of any other covenant or duty of Lessee, or of any subsequent breach of the same covenant or duty.

## SECTION XXX.
## ATTORNEY FEES

In the event that any action is filed in relation to this agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees.

## SECTION XXXI.
## MODIFICATION OF AGREEMENT

Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in a writing signed by each party or an authorized representative of each party.

## SECTION XXXII.
## NOTICES

A.    All notices, demands, or other writings in this lease agreement provided to be given or made by personnel delivery or may sent, given, or made by either party to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

TO Lessor:        JOSEPH C. REYES and MARY ANN S. MILNE
                  PO Box 500710
                  Saipan MP 96950

TO Lessee:        TRANS PACIFIC EXPORT CO., LLC
                  P.O. Box 1810
                  Lake Oswego, Or 97035

B.    The address to which any notice, demand, or other writing may be given or made or sent to any party as above provided may be changed by written notice given by such party as above provided.

## SECTION XXXIII.
## BINDING EFFECT

This agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties.

## SECTION XXXIV.
## COUNTERPARTS

This agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

## SECTION XXXV.
## PARAGRAPH HEADINGS

The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

## SECTION XXXVI.
## ESTOPPEL CERTIFICATES

Either party shall, at any time and from time to time, upon not less than fifteen (15) days prior notice from the other party, execute, acknowledge, and deliver to the other a statement in writing certifying that the lease is unmodified (or in full force and effect as modified and stating the modifications) and that there are no defaults existing, or if there is any claimed default stating the nature and extent thereof.  It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by third persons.

## SECTION XXXVII.
## CONSENT AND APPROVAL

Whenever the consent, approval or assistance of Lessor or Lessee's mortgagee is required under the terms of or in connection with this lease, such consent, approval or action shall not be arbitrarily or unreasonably withheld or delayed and no money shall be charged therefore other than for a reasonable fee for processing the same.  Failure to approve or disapprove within thirty (30) days after written request therefor shall be construed as approval.  Lessor hereby irrevocably appoints Lessee Lessor's attorney-in-fact to execute all documents that any assignee, sublessee, lender, mortgagee, or other party may require to fully implement the intent of this paragraph.

## SECTION XXXVIII.
## GENDER

The use of any gender shall include any and all genders and the use of any number shall be construed as singular or plural, as the case may be.

## SECTION XXXIX.
## SPOUSAL CONFIRMATION

Public Law 7-22, the Marital Property Act of 1990, provides that all property of spouses is presumed to be marital property. Mary Ann S. Milne is an unmarried widow. Joseph C. Reyes is an unmarried man.

**IN WITNESS WHEREOF**, each party to this lease agreement has caused it to be executed at Garapan, Saipan, Commonwealth of the Northern Mariana Islands on the date first mentioned above.

LESSOR:                                LESSEE:


_____          _____
MARY ANN S. MILNE                TRANS PACIFIC EXPORT COMPANY
                                 By its authorized representative


_____
JOSEPH C. REYES

Lease Agreement between
Joseph Reyes & Mary Ann Milne
and Trans Pacific Export
Page 14

## ACKNOWLEDGMENT

COMMONWEALTH OF THE NORTHERN                )
MARIANA ISLANDS                             ) ss
SAIPAN                                      )

On this _____ day of April 2005, before me, the undersigned Notary Public, in and for the Commonwealth of the Northern Mariana Islands, personally appeared MARY ANN S. MILNE to me personally known to be the person who executed the above and foregoing document and who acknowledged execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the date and year first above written.

_____
                          Notary Public

COMMONWEALTH OF THE NORTHERN                )
MARIANA ISLANDS                             ) ss
SAIPAN                                      )

On this _____ day of April, 2005, before me, the undersigned Notary Public, in and for the Commonwealth of the Northern Mariana Islands, personally appeared JOSEPH C. REYES to me personally known to be the person who executed the above and foregoing document and who acknowledged execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the date and year first above written.

_____

Lease Agreement between
Joseph Reyes & Mary Ann Milne
and Trans Pacific Export
Page 15

Notary Public

)
) ss
)

On this _____ day of April 2005, before me, the undersigned Notary Public, in and for the State of Oregon personally appeared _____, the authorized representative of TRANS PACIFIC EXPORT COMPANY, LLC to me personally known to be the person who executed the above and foregoing document and who acknowledged execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the date and year first above written.

_____

Notary Public