SMITH & WILLIAMS
Attorneys at Law
P.O. Box 5133 CHRB
Saipan, MP 96950
Tel:    233-3334
Fax:    233-3336

Attorneys for Plaintiff

```
                    F I L E D
                       Clerk
                   District Court

               DEC  -4 2007

          For The Northern Mariana Islands
          By_____
                   (Deputy Clerk)
```

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TRANS PACIFIC EXPORT COMPANY LLC, <br><br>     Plaintiff, <br><br>       vs. <br><br> MARY ANN S. MILNE, <br><br>     Defendant. | **Civil Action No. CV 05-0032** <br><br><br> **LODGING OF SETTLEMENT AGREEMENT WITH THE COURT** <br><br><br> Date:    N/A <br> Time:    N/A <br> Judge:   Alex R. Munson |

Attached is the settlement agreement executed by the parties on December 4, 2007, with a copy of the lease agreement executed on the same date.

Dated this 4th day of December 4, 2004.

SMITH & WILLIAMS
Attorney for Plaintiff


By:_____
ERIC S. SMITH

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is made effective on and entered this 4th day of December, 2007, by and between plaintiff Trans Pacific Export Company, LLC,. ("TransPac "), and the defendant Mary Ann S. Milne ("Milne"), in the lawsuit entitled *Trans Pacific Export Company, LLC v. Mary Ann S. Milne, United States District Court Civil Case Action No. 05-0032* (the "Action"), and subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, TransPac alleges that it was the assignee of a lease the real property of which was owned by Milne; and

WHEREAS, a dispute arose regarding the exercise of the option of the assigned lease which resulted in the filing of a lawsuit in United States District Court, captioned *Trans Pacific Export Company, LLC v. Mary Ann S. Milne,* Civil Case Action No. 05-0032; and

WHEREAS, the parties to this Agreement desire amicably to resolve their differences and all claims related thereto for their mutual benefit.

NOW THEREFORE, in consideration of the mutual covenants and promises herein, the parties hereto agree to compromise their claims and settle with one another as follows:

1.    Nature and Effect of Agreement.

     a.    This Agreement consists of a compromise and settlement by the parties to this Agreement of all of TransPac's claims against Milne related to the disputes and claims described in the lawsuit referred to above, and from all actual or potential claims of TransPac that in any way relates to, or arises from, Milne's ownership and TransPac's leasehold interest in the below described real property:

     (1)    Lot No. 1925-4, containing an area of 2,322 square meters, more or less;

     (2)    Lot No. 1925-5-1, containing an area of 93 square meters, more or less;

     (3)    Lot No. 1925-5-2, containing an area of 325 square meters, more or less; and

    (4)    Lot No. 1925-6-1, containing an area of 388 square meters, more or less.

This real property is located in Garapan, Saipan, Commonwealth of the Northern Mariana Islands which is owned by Milne in fee simple absolute. By executing this Agreement, the parties intend to and do hereby release and extinguish any and all claims of any type heretofore existing that in any way relates to, but not limited to, TransPac's leasehold interest in the real property owned in fee simple absolute by Milne as described in the lease attached hereto and fully incorporated herein by this reference.

    b.    This Agreement is not, and shall not be treated as, an admission of liability by any party hereto for any purpose.

2.    <u>Consideration.</u>

    a.    Milne shall execute a lease by granting to TransPac a 55-year leasehold interest in the four lots of real property described above. The term of the lease shall commence on November 1, 2007. A copy of the executed lease is attached hereto and made part of this settlement agreement as if fully set forth herein.

    b.    TransPac shall pay to Milne the amount of Thirteen Thousand Dollars ($13,000.00) upon execution of the Lease Agreement.

    c.    TransPac shall pay to Milne the amount of Three Thousand Two Hundred Fifty Dollars ($3,250.00) within six months of execution of this lease or on May 4, 2008.

    d.    TransPac shall pay Milne Fourteen Thousand Dollars ($14,000.00) on February 1, 2009, or earlier if any of the events under Section 2 e of this Settlement Agreement have occurred prior to that date.

    e.    The first payment of rent under the schedule of payment of rent set forth in the lease agreement, shall be the first happening of any of the following events:

    i.    Upon the transfer of TransPac's interest in the demised property to a third party, or

    ii.    Upon the assignment of the Lease Agreement, or

    iii.    Upon the Lessee subletting any portion of the demised premises, or

    iv.      Upon the Lessee commencing doing business upon any portion of the demised premises, or

    v.      On November 1, 2009,

    f.      Upon a transfer of an interest in the demised property by an assignment of the Lease Agreement, TransPac shall pay Milne the sum of Sixty Thousand Dollars ($60,000.00) and an amount representing Ten Percent (10.0%) of the Gross Sales Price of the assignment when payment is received, or Ten Percent (10.0%) of each installment payment made to pay the Gross Sales Price sum as each installment amount is received by TransPac. Gross Sales Price is defined as that sum received by TransPac, or is entitled to receive, without reference to any deduction of any expenses or costs whatsoever, including but not limited to costs and expenses for brokerage commission, appraisal fees, preliminary title report fees, attorney fees associated with the preparation of the transfer documents, or escrow fees.

    g.      Upon the assignment or subletting of any of the demised premises, Lessee shall provide Lessor a declaration stating that the transfer of the interest in the property as reflected in the documentation of transfer, is true and accurate.

    h.      Upon assignment of the Lease Agreement, if that assignment includes an agreement to assign any leasehold interest that TransPac has in Lot No.1925-6-R1 under that lease agreement between Teresita Faisao Borja, lessor, and Basic Construction & Supply Corporation, lessee, in that certain 55-year lease dated May 18, 1992, and filed with the Commonwealth Recorder as File No. 92-1680 on May 18, 1992, as assigned to Trans Pacific Export Co. LLC on October 1, 2000, and filed with the Commonwealth Recorder as File No. 00-2471 on November 15, 2000, Milne shall receive an amount representing Ten Percent (10.0%) of the Gross Sales Price of the assignment of the Borja lease, or if installment payments are made on the assignment, TransPac shall pay Milne Ten Percent (10.0%) of each installment payment as the installment payments are received. The real property of the May 18, 1992, Borja lease is more particularly described as:

        Lot No. 1925-6-RI , located in Saipan, CNMI, more particularly described as 1,349 square meter portion of Lot No 1925-6 (originally a part of Lot 1925, TD 401) containing an area of 1,737 square meters, more or less, and as more particularly described on Drawing/Cadastral Plat No 2105/85, which was recorded with Commonwealth Recorder's Office, as Document 85-1318 on July 7, 1985.

    i.      TransPac shall dismiss the Action with prejudice upon both parties signing this Agreement.

Settlement Agreement & Release
*TransPac v. Milne*
CV 05-0032
Page 4

3.    Releases

    a.    <u>Release by TransPac</u>.

        (1)    In consideration of the mutual promises and covenants herein contained, TransPac hereby completely and forever releases acquits and forever discharges Milne, from any and all claims, demands, obligations, lawsuits, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether named or unnamed, contingent or uncertain, known or unknown, which as of the effective date of this Agreement, TransPac has against Milne.

        (2)    TransPac, as to the claims released herein, represents and warrants that even if it should eventually suffer additional damages arising out of the facts giving rise to this Agreement, TransPac will not be able to make any claim for those additional damages. Furthermore, TransPac acknowledges that it intends these consequences even as to claims for damages that are released herein that may exist as of the date of this Agreement but which TransPac does not know exist, and which, if known, would materially affect TransPac's decision to execute this Agreement, regardless of whether its lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause. TransPac does not release Milne for any breach of this Agreement or any breach arising from any of its terms or conditions.

    b.    <u>Release By Milne</u>.

        (1)    In consideration of the mutual promises and covenants herein contained, Milne, hereby completely and forever releases acquits and forever discharges TransPac and its successors, assigns, and attorneys from any and all claims, demands, obligations, lawsuits, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether named or unnamed, contingent or uncertain, known or unknown, which as of the effective date of this Agreement, Milne has against TransPac.

        (2)    Milne, as to the claims released herein, represents and warrants that even if she should eventually suffer additional damages arising out of the facts giving rise to this Agreement, Milne will not be able to make any claim for those damages. Furthermore, Milne acknowledges that she intends these consequences even as to claims for damages that are released herein that may exist as of the date of this Agreement but which Milne does not know exist, and which, if known, would materially affect her decision to execute this Agreement, regardless of whether their lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause. Milne does not release TransPac, for any breach of this agreement or any breach arising from any of its terms or conditions.

4.      Agreement Terms and Conditions.  Each party to this Agreement warrants and represents in executing this Agreement, that he/she/it has read all of the terms of the Agreement and that each party fully understands the terms of the Agreement.

5.      Authority.  Each party to this Agreement represents that the person signing this Agreement has full power, authority, and capacity to execute and perform his/her/its obligations under this Agreement on behalf of the party he or she represents.

6.      Successors and Assigns.  This Agreement is binding upon, and shall inure to the benefit of the parties hereto, and to their respective representatives, successors, attorneys, agents, partners, past or present employees, past or present independent contractors, principals, affiliated companies, employers, heirs, trustees, personal representatives, sureties, bonding companies, insurers and assigns.  This Agreement shall not be assignable by any party hereto without the prior written consent of the other party.

7.      Continued Cooperation.  Each party to this Agreement shall cooperate fully in the execution of any and all other documents and in the completion of any additional actions that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

8.      Attorneys' Fees.  Each party shall bear his own attorneys' fees and costs arising in connection with the Action and the preparation and execution this Agreement, and also those arising in connection with the past events referred to herein.  In the event that any party hereto may in the future bring an action to enforce the terms of this Agreement, then the party prevailing in that action shall recover from the opposing party in such an action his reasonable attorneys' fees incurred in connection therewith.

9.      Entire Agreement.  This Agreement contains the entire agreement and understanding between TransPac and Milne hereto with respect to the subject matter of this Agreement and supersedes any and all negotiations, prior discussions, and any prior written agreements and understandings with respect thereto.  This Agreement is intended to inure to the benefit of TransPac and Milne and shall be binding on TransPac and Milne upon the dismissal of the action by TransPac.

10.     Written Modification.  This Agreement may not be altered or amended except by agreement in writing executed by all parties.

11.     No Party Deemed Draft.  Each party to this Agreement and counsel for each party have reviewed this Agreement and the normal rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement. Should the rule that ambiguities be resolved against the drafting party be employed at a future date

notwithstanding the agreement of the parties to the contrary, the parties to this Agreement hereby agree that neither party is to be deemed to be the drafting party of this Agreement.

12.    Waiver. No breach of any provision hereof can be waived unless in writing. The waiver of any breach of this Agreement by any party hereto shall not be a waiver as to any other subsequent or prior breach.

13.    Governing Law. This agreement is entered into, and shall be construed and interpreted, in accordance with the laws of the Commonwealth of the Northern Mariana Islands.

14.    Execution in Counterparts. This Agreement may be executed in counterparts, and by facsimile or e-mail, each of which shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same document or instrument, and in making proof of this Agreement, it shall not be necessary to prove or account for more than one such counterpart.

15.    Severability. If any provision of this Agreement shall be deemed invalid, illegal or unenforceable by a court of competent jurisdiction, the rest of the Agreement shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law as long as the unenforceable provision is not deemed to be material to this Agreement.

16.    Nondisclosure of Information Concerning Business. The parties specifically agree that neither will at any time, in any manner, either directly or indirectly, communicate to any person, firm, or corporation any information of any kind concerning any matters affecting or relating to the Settlement Agreement or the negotiations that lead to entering into this Settlement Agreement, including, without limiting the generality of the foregoing, information of, about, or concerning the business of TransPac, its manner of operation, its plans, processes, or other data of any kind, nature, or description without regard to whether any or all of the foregoing matters would be deemed confidential, material, or important. The parties stipulating that as between them, the matters are important, material, and confidential and gravely affect the effective and successful conduct of the business of the TransPac and the TransPac's goodwill, and that any breach of the terms of this paragraph is a material breach of this agreement.

Settlement Agreement & Release
*TransPac v. Milne*
CV 05-0032
Page 7

Executed this 4TH day of December, 2007.

**Trans Pacific Export Company, LLC**

By: _____
    Its Duly Authorized Representative

**Mary Ann Milne**

By: _____

Approved as to Form:

**Eric S. Smith**

_____
Counsel for TransPac

**Robert T. Torres**

_____
Counsel for Milne

(Above for Recording Use Only)

# LEASE AGREEMENT

This Lease Agreement is made on the 4th day of December, 2007, by and between **MARY ANN S. MILNE** of Saipan, Commonwealth of the Northern Mariana Islands, hereinafter referred to as the "Lessor," and **TRANS PACIFIC EXPORT COMPANY, LLC** an Oregon limited liability company, hereinafter referred to as "Lessee."

## SECTION I.
## CONSIDERATION

In consideration of the payment of rent, the mutual covenants contained herein, and other valuable consideration, the receipt of which is hereby acknowledged, the parties agree:

## SECTION II.
## DESCRIPTION OF PREMISES

A.    Lessor leases to Lessee the real property, hereafter referred to as the "Premises" or "demised premises," currently known as follows:

1.    Lot Number 1925-4 (formerly Lot No. 1925 "A" (Rem.)) located in Saipan, CNMI, as more particularly described on Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985, with coordinates as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,919.13 meters north and 50,468.08 meters east of the Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 38.10 meters to Corner 2;
Thence N 81° 24' 27" E, 60.96 meters to Corner 3;
Thence N 09° 53' 55" W, 38.10 meters to Corner 4;
Thence N 81° 24' 27" W, 60.96 meters to Corner 1,
the point beginning.

The above described property contains an area of 2,322 square meters, more or less.

2.      Lot No. 1925-5-2, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,945.59 meters north and 50,534.57 meters east of the Mariana Islands Coordinate System of 1966.

Thence S 81° 24' 27" E, 18.29 meters to Corner 2;
Thence S 09° 53' 55" W, 11.69 meters to Corner 3;
Thence S 65° 22' 33" W, 22.19 meters to Corner 4;
Thence N 09° 53' 55" E, 23.85 meters to Corner 1,
the point beginning.

The above described property contains an area of 325 square meters, more or less.

Lot No. 1925-5 is described on the Subdivision Plat DLS Check No. 2105/85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

3.      Lot No. 1925-5-1, located in Saipan, CNMI, more particularly described as follows:

Part of lot 1925-5, said lot 1925-5 being described on the plat recorded with the Commonwealth Recorder as Document No 85-1318 at book 1 page 117, on July 17, 1985,

Beginning at a corner which is designated as Corner No 1. having plane rectangular coordinates of 51,942.86 meters North and 50,552.66 meters East of the Mariana Islands Coordinate System of 1966;

Thence South 81 24' 27" East a distance of 11.55 meters to corner 2;

Thence Easterly on the arc of a circle 9.14 meters in radius curving to the left an arc distance of 3.39 meters, the chord of said arc running South 14 00' 30" East, a distance of 3.37 meters to corner 3;

Thence South 65 22' 33" West a distance of 15.67 meters to corner 4;

Thence North 09 53' 55" East a distance of 11.69 Meters to corner 1, the point of beginning.

The above described property contains an area of 93 square meters, more or less.

4.      Lot No. 1925-6-1, located in Saipan, CNMI, more particularly described as follows:

Beginning at a corner which is designated as Corner No. 1, having plane rectangular coordinate of 51,908.052 meters north and 50,528.020 meters east of the Mariana Islands Coordinate System of 1966.

Thence N 09° 53' 55" E, 14.25 meters to Corner 2;
Thence N 65° 22' 33" E, 22.19 meters to Corner 3;
Thence S 07° 16' 27" W, 26.41 meters to Corner 4;
Thence N 81° 24' 27" W, 19.50 meters to Corner 1,
the point beginning.

The above described property contains an area of 388 square meters, more or less.

Lot No. 1925-6 is described on the Subdivision Plat DLS Check No. 2105-85, filed with the Commonwealth Recorder as Document No. 85-1318, on July 17, 1985.

Together with the improvements thereon and the appurtenances and all the rights, title and interest of Lessor in and to land lying in all streets, highways and rights-of-way abutting on or appurtenant to said property, all of said lease property.

## SECTION III.
## TERM

A.    The lease term shall be for fifty-five (55) years, commencing on November 1, 2007, and terminating on October 31, 2062.

## SECTION IV.
## RENT

A.    For the first partial term of this Lease, from November 1, 2007, through January 31, 2010, the basic rent for the demised premises is $2844.00 per month.

B.    For the next five (5) years of the term of this Lease, from February 1, 2010, through January 31, 2015, the rent for the demised premises is $3128.40 per month, an increase of rent of ten percent (10.0%) per month from the previous monthly rental term.

C.    For the next five (5) years of the term of this Lease, from February 1, 2015, through January 31, 2020, the rent for the demised premises is $3441.24 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

D.    For the next five (5) years of the term of this Lease, from February 1, 2020, through January 31, 2025, the rent for the demised premises is $3785.36 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

E.     For the next five (5) years of the term of this Lease, from February 1, 2025, through January 31, 2030, the rent for the demised premises is $4163.90 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

F.     For the next five (5) years of the term of this Lease, from February 1, 2030, through January 31, 2035, the rent for the demised premises is $4580.29 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

G.     For the next five (5) years of the term of this Lease, from February 1, 2035, through January 31, 2040, the rent for the demised premises is $5038.32 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

H.     For the next five (5) years of the term of this Lease, from February 1, 2040, through January 31, 2045, the rent for the demised premises is $5542.15 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

I.     For the next five (5) years of the term of this Lease, from February 1, 2045, through January 31, 2050, the rent for the demised premises is $6096.37 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

J.     For the next five (5) years of the term of this Lease, from February 1, 2050, through January 31, 2055, the rent for the demised premises is $6706.01 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

K.     For the next five (5) years of the term of this Lease, from February 1, 2055, through January 31, 2060, the rent for the demised premises is $7376.61 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

L.     For the final term of this Lease, from February 1, 2060, through October 31, 2062, the rent for the demised premises is $8114.27 per month, an increase of rent of ten percent (10.0%) per month from the previous five year monthly rental term.

## SECTION V.
## USE OF PREMISES

A.     The Premises may be used for all legal purposes.

B.     Lessee shall not use the demised Premises for any unlawful use.

C.     Lessee shall maintain the demised Premises in a sanitary condition, and shall not keep, permit, or maintain any nuisance in or on the demised Premises.

## SECTION VI.
## OWNERSHIP OF IMPROVEMENTS AND FIXTURES

A.      As further consideration for entering into this lease, all improvements, fixtures, and equipment existing on the premises at the commencement date of this lease are acknowledged to be Lessee's personal property and Lessor have no interest therein during the term of the lease.

B.      In the event improvements on the demised premises are destroyed or damaged by fire, typhoon, or any other casualty, then as often as the same shall happen all insurance proceeds, if any, in the name of Lessee on the Premises, shall be available for and may be used by Lessee as it desires, and Lessor shall have no interest therein.

C.      Lessee covenants that, on the last day of the term of the lease, Lessee will peaceably and quietly leave and surrender the Premises and all improvements and fixtures situated thereon, in their then current condition, and title to all such improvements and fixtures shall pass to Lessor.

## SECTION VII.
## ALTERATIONS, ADDITIONS, AND IMPROVEMENTS

A.      During the term of this lease Lessee, its sublessees and licensees, shall have the right, but not the obligation, at any time and from time to time to erect, maintain, alter, remodel, reconstruct, rebuild, replace, remove, demolish, or otherwise dispose of all buildings, other improvements, fixtures, or equipment or any portion of any such improvements, fixtures and equipment on the premises. Notice by Lessee or the consent by Lessor to erect, maintain, alter, remodel, reconstruct, rebuild, replace, remove, demolish, or otherwise dispose of any buildings or other improvements, fixtures, or equipment on the premises shall not be required to be given. Any change, alteration, or improvements, shall be borne and paid for by Lessee. Lessor shall receive no compensation for the improvements, fixtures, or equipment erected, altered, remodeled, reconstructed, rebuilt, replaced, removed, demolished, or otherwise modified.

B.      Before commencement of any work that require plans to be submitted and approved by a governmental agency, all plans and specifications shall be filed with and approved by all governmental departments or authorities having jurisdiction and any public utility company having an interest in such matters, and all work shall be done in accordance with the requirements of local regulations.

C.      Lessee shall have the right in connection with any development of the property, at its sole option, at any time during the term of this lease, to remove vegetation and to excavate and to remove sand, soil, and other materials from the Premises for the purpose of making alterations, improvements, and properly to maintain the demised premises for their intended use. In no event shall any such action constitute waste and the Lessor hereby releases Lessee, its successor, sublessees, licensees, and assignees from any obligation to restore the Premises to the condition existing upon the commencement date of this lease.

## SECTION VIII.
## MAINTENANCE AND REPAIR

Lessee shall, at all times during the term of this agreement and at its own cost and expense, repair and maintain in a good, safe, and substantial condition, the demised premises and shall use all reasonable precaution to prevent waste, damage, or injury to the demised premises.

## SECTION IX.
## EASEMENT FOR STREETS, WATER, ETC.

In order to provide for the more orderly development of the Premises, it may be necessary, desirable, or required that street, water, sewer, drainage, gas, power line and other easements and dedications, and similar rights be granted or dedicated over or within portions of the Premises. As one of the moving considerations to Lessee for the execution of this lease, Lessor shall, upon request of Lessee, join with Lessee in executing and delivering such documents from time to time, and throughout the term of this lease, as may be appropriate, necessary, or required by the several governmental agencies, public utilities, and companies for the purposes of granting such easements and dedications, provided that such easements and dedications shall not materially diminish or interfere with Lessor' reversionary interest.

## SECTION X.
## ZONING AND SUBDIVISION PERMITS

In the event that Lessee deems it necessary or appropriate to obtain conditional use permits, zoning changes, variances, consolidation or subdivision and plan approval for the Premises, any part thereof and/or such adjoining parcels in which Lessor or Lessee may now have or hereafter acquire an interest, Lessor agrees, from time to time upon request of Lessee, to execute such documents, petitions, applications, and authorizations as may be appropriate or required to serve any of the foregoing relating to the establishment, without limitation, of a planned unit development, a condominium, or cooperative apartment arrangement or other development without further consideration.

## SECTION XI.
## LESSEE TO BEAR EXPENSE

In all of the foregoing instances in which the assistance of the Lessor is required, Lessor shall be without expense therefor, the cost and expense thereof to be borne solely by Lessee.

## SECTION XII.
## UTILITIES

Lessee shall pay for all electricity, gas, water, telephone, and cable TV used or consumed by Lessee or Lessee's guests, tenants, or employees on the demised Premises.

## SECTION XIII.
## TAXES

A.    Lessee shall pay all real property taxes and assessments levied against the demised Premises that accrue after execution and delivery of the demised Premises.

B.    Anything in this Section to the contrary notwithstanding, Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor' legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the Premises herein leased which may become a lien on the Premises or collectable out of the same.

C.    Lessee shall have the right to contest the validity of any tax or special assessment payable by it which Lessee deems to have been illegally levied or assessed against the Premises, and for that purpose shall have the right to institute such proceeding or proceedings in the name of Lessor as Lessee may deem necessary, provided that the expenses incurred by reason thereof shall be paid by Lessee, and provided further, that it is necessary to use the name of Lessor in carrying on such proceedings.

## SECTION XIV.
## LIABILITY OF LESSOR

Lessee shall be in exclusive control and possession of the demised premises, and Lessor shall not be liable for any injury or damages to any property or to any person on or about the demised premises or for any injury or damage to any property of Lessee, unless caused by the willful acts or omissions or negligence of Lessor its employees, agents, licensees or contractors.

## SECTION XV.
## INDEMNITY

Lessee shall save Lessor harmless and indemnify Lessor from all injury, loss, claims or damage to any person or property while on the leased premises, unless caused by the willful acts or omissions or negligence of Lessor its employees, agents, licensees or contractors.

## SECTION XVI.
## DEFAULT OR BREACH

The following shall be deemed to be an event of default by Lessee under this Lease and Lessor may, at its option and without limiting Lessor in the exercise of any other right or remedy it may have on account of a default or breach by Lessee exercise the rights and remedies specified under "Remedies" if:

A.    If Lessee shall fail to perform or comply with any of the conditions of this lease agreement and if the nonperformance shall continue for a period of thirty (30) days after receipt of written notice of nonperformance given by Lessor to Lessee, or if the performance cannot be reasonably had within the thirty-day (30) period, and Lessee has not in good faith commenced

performance within the thirty-day (30) period and has not diligently proceed to completion of performance.

B.    If Lessee, or any successor or assignee of Lessee while in possession, shall file a petition in bankruptcy, under Chapter 7 of the Bankruptcy Act, or insolvency under any bankruptcy act, or shall voluntarily take advantage of any such act by answer or otherwise, or shall make an assignment for the benefit of creditors, and shall fail to pay lessor the monthly rent when due.

C.    If involuntary proceedings under any bankruptcy law or insolvency act shall be instituted against Lessee, or if a receiver or trustee shall be appointed of all or substantially all of the property of Lessee, and such proceedings shall not be dismissed or the receivership or trusteeship vacated within one hundred eighty (180) days after the institution or appointment.

## SECTION XVII.
## REMEDIES

On any uncured breach, uncured default, or abandonment, Lessor may terminate this Lease, in which event Lessee agrees to immediately surrender possession of the Premises.

## SECTION XVIII.
## CONDEMNATION

Rights and duties in the event of eminent domain or condemnation are as follows:

A.    If the whole of the demised Premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, this lease agreement shall cease and terminate as of the date on which title shall vest in that authority.

B.    If only a portion of the demised Premises shall be taken or condemned, this lease agreement, at the option of the Lessee, shall not cease or terminate.

C.    In the event of any taking or condemnation in whole or in part, of the real property or the improvements, the entire resulting award of consequential damages shall be divided between the Lessor and Lessee in amounts as their interest are affected. Unless the parties agree to a fair and equitable division of the award of damages, the division of such award shall be determined by binding arbitration.

D.    If the Lessee exercises its option to continue with the lease upon a partial taking by a governmental agency, the rent shall be reduced in proportion to the land taken as it bears to the total area of land leased under this agreement. Unless the parties agree to a fair and equitable amount of change in rent, the amount of rent to be paid shall be determined by binding arbitration.

E.    In case of any governmental action not resulting in the taking or condemnation of any portion of the demised premises but creating a right to compensation for such action, or, if less than a fee title to all or any portion of the demised premises shall be taken or condemned by

any governmental authority for temporary use or occupancy, this lease agreement shall continue in full force and effect without reduction or abatement of rent, any resulting award of damages shall be awarded to the Lessee.

  F.  Lessee shall be entitled to all condemnation awards attributable to any improvements taken by any governmental action.

## SECTION XIX.
## LESSOR'S WARRANTY OF TITLE

  A.  Lessor warrants and covenants that the Premises described above are the property of the Lessor in fee simple absolute and Lessor has the full and unhindered right to make this lease.

  B.  There are no liens or encumbrances against the Premises which are superior to this lease.

  C.  Lessor shall cause any lien or encumbrance against the Premises or any portion thereof which is superior or inferior to this lease to be promptly discharged or subordinated to this lease at the request of Lessee or its lender. The cost of securing the subordination of such lien or encumbrance to this lease shall be borne solely by the Lessor.

  D.  Lessor shall execute, cause to be executed, or procure and furnish to Lessee, without expense to Lessee, any further assurances of title consistent with the warranties of this Section that may be reasonably required by Lessee for Lessee's protection or in connection with the use of the Premises.

  E.  Lessor will, and its successors, heirs, executors and administrators, warrant and defend the same to lessee, it's successors and assigns, against the lawful claims and demands of all persons.

## SECTION XX.
## QUIET ENJOYMENT

  Lessor warrants that Lessee shall be placed in and granted peaceable and quiet enjoyment of the demised premises, and that Lessee, its successors and assigns, be permitted to hold, occupy and enjoy the Premises free from any eviction, hindrance, molestation, or interference by Lessor or any person claiming by, through, or under Lessor during the term of the Lease.

## SECTION XXI.
## AUTHORITY OF LESSEE TO ENTER INTO LEASE

  Lessee limited liability company has obtained the necessary approval from its members to enter into this lease agreement.

## SECTION XXII.
## ASSIGNMENT OR SUBLEASE

A.    This lease may be assigned or transferred, or all or any part of the demised Premises may be sublet or occupied by any person other than Lessee.  Notice by Lessee or the consent by Lessor to an assignment, mortgage, pledge, sublet, occupancy, or transfer shall not be required to be given.  Lessee, however, shall provide a copy to Lessor of any assignment or sublease 15 days after execution of such assignment or sublease.

## SECTION XXIII.
## MORTGAGE OF LESSEE'S INTEREST

Lessee may, at any time or from time to time during the term of this lease, encumber by mortgage or other security instrument, by way of assignment, or otherwise, Lessee's interest under this lease and the leasehold estate hereby created in whole or in part, for any purpose, without notice to or the consent of Lessor.  Lessor shall provide a non-disturbance agreement upon request of Lessee, Lessee shall bear the cost and expense thereof.

## SECTION XXIV.
## EFFECT OF PARTIAL INVALIDITY

Should any section or any part of any section of this agreement be rendered void, invalid, or unenforceable by any court of law, for any reason, such a determination shall not render void, invalid, or unenforceable any other section or any part of any section in this agreement.

## SECTION XXV.
## CHOICE OF LAW

This agreement has been made and entered into in the Commonwealth of the Northern Mariana Islands, and the laws of such Commonwealth shall govern the validity and interpretation of this agreement and the performance due hereunder.

## SECTION XXVI.
## INTEGRATION

The drafting, execution, and delivery of this agreement by the parties have been induced by no representations, statements, warranties, or agreements other than those expressed herein. This agreement embodies the entire understanding of the parties, and there are no further or other agreements or understandings, written or oral, in effect between the parties relating to the subject matter hereof unless expressly referred to herein.  Any prior understanding or representation of any kind preceding the date of this lease agreement shall not be binding upon either party except to the extent incorporated in this lease agreement.

## SECTION XXVII.
### WAIVERS

Waiver by Lessor of any breach of any covenant or duty of Lessee under this lease is not a waiver of a breach of any other covenant or duty of Lessee, or of any subsequent breach of the same covenant or duty.

## SECTION XXVIII.
### ATTORNEY FEES

In the event that any action is filed in relation to this agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees.

## SECTION XXIX.
### MODIFICATION OF AGREEMENT

Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in a writing signed by each party or an authorized representative of each party.

## SECTION XXX.
### NOTICES

A.    All notices, demands, or other writings in this lease agreement provided to be given or made by personnel delivery or may sent, given, or made by either party to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

To Lessor:    MARY ANN S. MILNE
PO Box 502894
Saipan MP 96950

To Lessee:    TRANS PACIFIC EXPORT CO., LLC
P.O. Box 1810
Lake Oswego, OR 97035

B.    The address to which any notice, demand, or other writing may be given or made or sent to any party as above provided may be changed by written notice given by such party as above provided.

## SECTION XXXI.
## BINDING EFFECT

This agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties.

## SECTION XXXII.
## COUNTERPARTS

This agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

## SECTION XXXIII.
## PARAGRAPH HEADINGS

The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

## SECTION XXXIV.
## ESTOPPEL CERTIFICATES

Either party shall, at any time and from time to time, upon not less than fifteen (15) days prior notice from the other party, execute, acknowledge, and deliver to the other a statement in writing certifying that the lease is unmodified (or in full force and effect as modified and stating the modifications) and that there are no defaults existing, or if there is any claimed default stating the nature and extent thereof. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by third persons.

## SECTION XXXV.
## CONSENT AND APPROVAL

Whenever the consent, approval or assistance of Lessor or Lessee's mortgagee is required under the terms of or in connection with this lease, such consent, approval or action shall not be arbitrarily or unreasonably withheld or delayed and no money shall be charged therefore other than for a reasonable fee for processing the same. Failure to approve or disapprove within thirty (30) days after written request therefor shall be construed as approval.

## SECTION XXXVI.
## GENDER

The use of any gender shall include any and all genders and the use of any number shall be construed as singular or plural, as the case may be.

**IN WITNESS WHEREOF**, each party to this lease agreement has caused it to be executed at Garapan, Saipan, Commonwealth of the Northern Mariana Islands on the date first mentioned above.

LESSOR:                                            LESSEE:

_____                           _____
MARY ANN S. MILNE                                 TRANS PACIFIC EXPORT COMPANY,
                                                  LLC
                                                  By its authorized representative
                                                  KEVIN MENDENHALL

Lease Agreement between
Mary Ann Milne &
Trans Pacific Export
Page 14

## ACKNOWLEDGMENT

COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS )  ss
SAIPAN )

     On this 4th day of December, 2007, before me, the undersigned Notary Public, in and for the Commonwealth of the Northern Mariana Islands, personally appeared MARY ANN S. MILNE to me personally known to be the person who executed the above and foregoing document and who acknowledged execution of the same.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the date and year first above written.



                                                    Notary Public

ERIC S. SMITH
...wealth of the Northern Mariana Islands
Commission expires on the
19... ...of ...141... ...200...

COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS )  ss
SAIPAN )

     On this 4th day of December, 2007, before me, the undersigned Notary Public, in and for the Commonwealth of the Northern Mariana Islands, personally appeared KEVIN MENDENHALL, the authorized representative of TRANS PACIFIC EXPORT COMPANY, LLC to me personally known to be the person who executed the above and foregoing document and who acknowledged execution of the same.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the date and year first above written.

                                                    Notary Public

ERIC S. SMITH
...of the Northern Mariana Islands
...Commission expires on the
19... ...141... ...200...